RENE DUPONT *vs.* EDOUARD PELLETIER et als.

AND

ARTHUR A. HAMEL et al. *vs.* SAME.

York.   Opinion March 30, 1921.

*A charitable trust created and the failure of any particular mode for the adminis-
tration of the trust, does not defeat the trust.*

This case involves the interpretation of the will of Pierre Emmanuel Dupont
of Biddeford.

The first clause reads as follows:   "I give, bequeathe and devise all my estate,
real, personal and mixed, wherever found and wherever situated, to the Com-
munity of Carmelites located and established in Montreal, in the Province
of Quebec and Dominion of Canada, in trust nevertheless, to hold to them
and to their successors in trust, for the following purposes:

1.   To pay to my nephew, Dr. Eugene Panneton, annually during his lifetime,
the sum of five hundred dollars, when he shall become permanently incapaci-
tated from earning his own living; but if his incapacity is of a temporary
character, then to pay him a part of said sum of five hundred dollars, annually
proportional to the time of his temporary incapacity.   My said trustees
may act upon their own good judgment and discretion in the matter, but
a certificate of his attending physician shall be accepted as proof of his inca-
pacity.

2.   To pay to my sister, Emma Picard, annually during her lifetime, in event
that she may need assistance, the sum of five hundred dollars; but if such
needy condition is temporary, then to pay her a proportionate part of the
said sum of five hundred dollars, proportional to the time of her needs.   My
said trustees may act upon their own good judgment and discretion in the
matter, but a certificate of her attending physician shall be accepted as proof
of her needs.

3.   It is my desire to establish in said Biddeford a monastery of the order of
Carmelites to be devoted to the spiritual interests of the French population
of said Biddeford, and I direct my said trustees to appropriate all my estate,
subject to the foregoing provisions, to this object, and it is my desire that the
same be accomplished as soon as practicable; but if for any reason it is not
feasible that such monastery be established in said Biddeford, then the same
may be established in another place, but it shall be devoted to the spiritual
interests of such French population.

*Held:*

1. That the proper interpretation of Paragraphs 1 and 2, is, that the trustees should act upon the certificates of the family physician as final proof of the total or partial incapacity or need of the beneficiaries described therein.

2. That item 3 created a charitable trust.

3. That the refusal of the trustees therein named does not defeat the trust.

4. That the trust cannot be permitted to fail for want of a trustee.

5. That though the particular mode for the administration of the trust has failed, there appears no insurmountable difficulty in providing a mode in perfect harmony with the intent of the testator, and in full accomplishment of his purposes.

6. That the court feels fully justified in confiding the proper execution of the trust to the special knowledge and discretion of the pastors of the two Roman Catholic Churches in the city of Biddeford.

7. That the bill of Rene Dupont be dismissed.

8. That the bill of Arthur A. Hamel and Thomas B. Walker be sustained, with costs and reasonable counsel fees.

9. A decree is to be entered in accordance with this opinion.

On report.   A bill in equity seeking the construction of the will of Pierre Emmanuel Dupont, who died December 9, 1915, testate, and after specific bequests to relatives, gave the residuum of his estate to the Community of Carmelites, a religious corporation located at Montreal, Canada.   He was a French Canadian, a Roman Catholic Priest, and for thirty-five years next prior to his death had been pastor of St. Joseph's Church in Biddeford, Maine, his parishioners all being either French Canadians or their descendents.   Under the terms of the will the residuum of the estate was in trust for the payment of certain annuities to relatives, and to establish a monastery of the Order of Carmelites, to be devoted to the spiritual interests of the French population of Biddeford.   The trustee refused to qualify and accept said trust, and the question before the court was as to whether the construction of the will showed a general charitable intent so as to bring the bequest within the Cy pres doctrine, or that it was a bequest for a particular purpose and by such refusal of said Community of Carmelities to accept such bequest, it reverted to the corpus of the estate, and be distributed to the heirs at law.

Case is stated in the opinion.

(In first case) *Robert B. Seidel, and Louis B. Lousier,* for plaintiff.

*N. B. & T. B. Walker, Emery, Waterhouse & Paquin, John P. Deering, Charles L. Donahue, and Paul E. Donahue,* for defendants.

(In second case)  *N. B. & T. B. Walker*, for plaintiffs.

*Louis B. Lausier, Robert B. Seidel, Emery, Waterhouse & Paquin, and John P. Deering, and Charles L. Donahue, and Paul E. Donahue,* for defendants.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, MORRILL, WILSON, JJ.

SPEAR, J.   This case involves the interpretation of the will of Pierre Emmanuel Dupont of Biddeford.

The first clause reads as follows:  "I give, bequeathe and devise all my estate, real, personal and mixed, wherever found and wherever situated, to the Community of Carmelites located and established in Montreal, in the Province of Quebec and Dominion of Canada, in trust nevertheless, to hold to them and to their successors in trust, for the following purposes:

1.   To pay to my nephew, Dr. Eugene Panneton, annually during his lifetime, the sum of five hundred dollars, when he shall become permanently incapacitated from earning his own living; but if his incapacity is of a temporary character, then to pay him a part of said sum of five hundred dollars, annually proportional to the time of his temporary incapacity.  My said trustees may act upon their own good judgment and discretion in the matter, but a certificate of his attending physician shall be accepted as proof of his incapacity.

2.   To pay to my sister, Emma Picard, annually during her lifetime, in event that she may need assistance, the sum of five hundred dollars; but if such needy condition is temporary, then to pay her a proportionate part of said sum of five hundred dollars, proportional to the time of her needs.   My said trustees may act upon their own good judgment and discretion in the matter, but a certificate of her attending physician shall be accepted as proof of her needs.

3.   It is my desire to establish in said Biddeford a monastery of the order of Carmelites to be devoted to the spiritual interests of the French population of said Biddeford, and I direct my said trustees to appropriate all my estate, subject to the foregoing provisions, to this object, and it is my desire that the same be accomplished as soon as practicable; but if for any reason it is not feasible that such monastery be established in said Biddeford, then the same may be established in another place, but it shall be devoted to the spiritual interests of such French population.

Lastly—I do nominate and appoint Edouard Pelletier of said Biddeford, executor of this will and request and direct that he may be authorized to act as such without giving bonds; but in the event of his decease or that he declines to act, then I nominate and appoint Joseph Panneton executor of this will and direct and request that he may be authorized to act as such without being required to give bonds.

The solution of the questions raised in items 1 and 2, is comparatively clear. They fall in the same category as to how the total or partial incapacity in the one case, and the total or partial need in the other are to be ascertained. The testator in express terms leaves the determination of these matters to "good judgment and discretion" of the trustees, subject however to the final arbitration of the family physician.

The language of the testator in limiting the power of the trustees, in the exercise of their judgment, in the respects named, provides: "But a certificate of his attending physician shall be accepted, as proof of his incapacity;" and of "her attending physician, as proof of her needs."

It is contended that the word "proof" should be construed to mean "evidence" and that consequently the certificate cannot be regarded as final. We are of the opinion, however, that the word "proof" as used in these conditions in the will was intended by the testator to be used in the legal sense.

Evidence is but a medium of proof. Proof is the effect of evidence; is a deduction from evidence that produces conviction; the establishment of a fact by the evidence. But if the certificate is to be regarded as evidence, only, to whom would such evidence be referred, to determine whether it met the standard of proof? It must be to the trustees themselves, a proceeding which would merely remit the physician's certificate to "their judgment and discretion" and render the limiting clause inane and void. While the words "proof" and "evidence," in common usage, are sometimes employed indifferently, we are yet of the opinion that the phrase "shall be accepted as proof" was intended to mean that the certificate of the physician should be final. It furthermore seems reasonable, at least, that the testator conceived of this provision as a method of finally settling any controversy that might arise between the beneficaries and the trustees, as to the degree of disability or need, the very question now raised by Emma Picard.

The trustees are invested with the same right to invoke the certificate as the beneficiaries. The limitation of this right to "his family physician" and "her family physician" not their family physician, removes any doubt as to whom the referee shall be. In other words the provision for the "certificate of the family physician" imposes a limitation upon both the beneficiaries and the trustees and furnishes a tribunal by which each can have their privileges as well as their rights determined.

It is therefore the opinion of the court that the trustees should act upon the certificate of the family physician as final proof of the total or partial incapacity or need of the beneficiaries as described in items 1 and 2.

The trustee named in item 3, declined to accept the trust and therefore left the trust estate without a trustee. The present temporary trustees wish also to be relieved. Upon this state of facts two questions arise:

First, the intention of the testator, as discovered from the language of item 3, and the explanatory circumstances.

Second, must the trust fail for want of a trustee?

The entire phraseology of item 3, considered in connection with the admissible evidential circumstances, is most potent evidence that the main object and manifest purpose of this devout priest, who had labored so long and administered so faithfully to his people, was the dedication of his estate to the promotion of the spiritual welfare of the people of his own nationality. As he expressed it, "To be devoted to the spiritual interests of the French population of said Biddeford," a clearly charitable purpose. The monastery was conceived as a medium of administering this charitable trust. It was to act as trustee. It was not the end, but a means to the end. The provision, if not feasible to erect the monastery in Biddeford, that it might be located in some other indefinite place, but wherever located, "it shall be devoted to the spiritual interests of such French population," clearly indicates that the spiritual welfare of the French people, and not a monastery, was uppermost in his mind. It was his central thought expressed at the beginning and the end of item 3, as an observation will prove. We feel confident that the paramount thought in the mind of this benevolent priest was the spiritual welfare of the people of his own nationality in the City of Biddeford, for whose destiny in life and death he had, for so many years, been their spiritual adviser.

Accordingly the French population of the City of Biddeford are the well defined beneficiaries under the will of Father Dupont.

We now come to the second proposition: Must the trust fail for want of a trustee? The doctrine is too well established to require citation that a trust will not be permitted to fail for want of a trustee, if it can be legally avoided. The particular mode prescribed for the administration of the trust in the present case has failed, but when the intent and purpose of the trust, as above determined, are found to exist, there appears no insurmountable difficulty in providing a mode in perfect harmony with the intent of the testator, and in the full accomplishment of his purpose and design. In the City of Biddeford are two Roman Catholic Churches within the Roman Catholic jurisdiction of the State of Maine. Each parish is presided over by a priest, called a pastor. Here it is essential to distinguish between the office of a priest and that of a pastor. Bishop Walsh in his testimony stated the difference as follows: "The Priest is a position with a spiritual power, without reference to any particular locality; the Pastor is a priest who is appointed to a certain Parish to take charge of the temporal and spiritual welfare of that Parish, subject to the Bishop." It accordingly follows that, although a Priest, his functions as a Pastor are confined to the particular Parish over which he is appointed for the time being to preside, and is a permanent official of the Parish. The testator, in item 3, of his will, makes no reference to, or distinction between, the Parishes, in the City of Biddeford, whose people his benevolence was intended to assist. It was not his parish, nor the other parish, nor the American, the Irish, the German or the Jewish people, but the French people of the city, all of them, without class or distinction, whose welfare it was his purpose to promote. The language of the testator, twice expressed, that his bounty should be devoted to the "French population" is significant of his purpose to remember all the French people, alike.

The offices of the pastors of these two parishes in the City of Biddeford are permanent positions. While the priests may come and go, the succession to the office of pastor remains. Accordingly we find no insurmountable impediment in the way of designating the two pastors of the Roman Catholic Parishes of the City of Biddeford, and their successors, as joint trustees invested with authority to administer the trust created by the will of Father Dupont.

He left no specifications as to the manner of bestowing, distributing, or applying the proceeds of his trust to the "spiritual interests" of his people. It was, however, his undoubted wish and expectation that it might be administered in accordance with the particular canons of the Carmelites. But that course must be regarded as a suggestion and not a mandate of the court.

The Roman Catholic Church is so perfectly and systematically organized, and its methods of administering to the "spiritual interests" of its members, so definitely prescribed, and understood, at least, by all its clergy, that the court feels fully justified in confiding the proper execution of the present trust to the special knowledge and discretion of the pastors herein designated as trustees of the estate of Pierre Emmanuel Dupont.

We do not overlook the fact that the Cy pres doctrine has been fully argued with respect to one phase of the case, upon the theory that the monastery was the beneficiary and not the French population of Biddeford. But the conclusion that the French population is the beneficiary eliminates the application of the Cy pres doctrine. The invention of this doctrine is based upon the non-existence of the precise beneficiary of the trust, and the consequent diversion of the fund to the same general charitable purpose for which the trust was created. It carries out the general charitable intent. This being so, the argument based upon the premise that "the clause for spiritual benefit is too vague and indefinite for the court to enforce it," Cy pres fails for want of a premise. We therefore have no occasion to pass upon this phase of the case.

It is the opinion of the court that the bill of said Hamel and Walker should be sustained. The bill of *Rene Dupont* v. *Edouard Pelletier, et als.* is hereby dismissed. The said Arthur A. Hamel and Thomas B. Walker, the present trustees are hereby discharged from further execution of their trust and, upon the acceptance and qualifications of the trustees, herein named, of the trust imposed upon them, are authorized to pay over and deliver to the said last named trustees, the entire trust estate in their care and custody. The said Hamel and Walker are to be allowed reasonable costs and counsel fees. The case is to be remanded to the Probate Court for the execution of the decree, to be filed in accordance with this opinion.

*So ordered.*