Ferris A. FREME, Executor of the Estate of Annie L. Knox

v.

Bernard MAHER and Ricker College and Bates College, Bowdoin College, Colby College.

Supreme Judicial Court of Maine.

Argued June 16, 1983.

Decided Aug. 27, 1984.

---

Perkins, Thompson, Hinckley & Keddy, Thomas B. Wheatley (orally), Andrew A. Cadot, Portland, for plaintiff.

Verrill & Dana, Michael T. Healy (orally), Portland, Cabanne Howard (orally), Jerome Matus, Asst. Attys. Gen., Augusta, for defendant.

Before GODFREY,* NICHOLS, ROBERTS, WATHEN, JJ., and DUFRESNE, A.R.J.

ROBERTS, Justice.

The Trustees of Ricker College appeal from a judgment entered in the Superior Court, Aroostook County, on the report of a referee. They contend, *inter alia*, that the referee erroneously applied the doctrine of cy pres, and that the presiding justice erred in affirming the referee's award of attorneys' fees. Because we agree, we vacate the judgment and remand to the Superior Court for further proceedings.

On November 24, 1976, Annie L. Knox executed a will disposing of her estate, valued at nearly one half million dollars. She made a number of specific bequests to individuals and charitable institutions, and devised the residue of her estate as follows:

> ARTICLE FIFTEENTH: I give, bequeath and devise all the rest, residue and remainder of my estate, real, personal or mixed, wherever situated and however and whenever acquired, unto Ricker Classical Institute and Ricker College, a corporation organized and existing under the laws of the State of Maine and maintaining an educational institution at Houlton in the County of Aroostook and State of Maine, to be accepted by Ricker Classical Institute and Ricker College and held by it in trust in a fund to be known as the "George P. Knox and Annie L. Knox Memorial Fund", the net

---

* Godfrey, J., sat at oral argument and participated in the initial conference, but retired before this opinion was adopted.

income only to be used for such general purposes of said Institution as the Board of Trustees of said Institution may determine.

The will made no provision for reversion in the event of failure of the Ricker College bequest. Mrs. Knox died on January 22, 1978. Her will was allowed on February 21, 1978. On May 23, 1978, Ricker College was adjudicated bankrupt in a voluntary Chapter 11 proceeding initiated in 1974. Ricker's physical plant was subsequently closed.

On November 14, 1978, Ferris Freme, as executor of the Knox estate, filed a complaint in Superior Court seeking direction as to the proper disposition of the Ricker College bequest. The complaint named Bernard Maher, trustee in bankruptcy for the College, and other persons claiming an interest in the estate as parties defendant.[1] In the meantime, upon a motion filed with the United States Bankruptcy Court by the Board of Trustees of Ricker College, the bankruptcy court declined to exercise its jurisdiction to determine the applicability of the cy pres doctrine in this case. The court determined that the policy issues involved were more appropriate for determination by the courts of the State of Maine. Ricker then successfully moved to intervene in the Superior Court action on grounds that its interests and those of the trustee in bankruptcy were no longer consistent.

The Superior Court ordered that the matter be heard by a referee. The issues before the referee included the effect of the Ricker bankruptcy on the testamentary bequest and the possible application of the doctrine of cy pres. At the hearing, the trustees of Ricker College urged that they be permitted to hold the bequest in trust, and to use the income from the trust to provide scholarships to help Maine students, and especially those from Aroostook County, attend post-secondary institutions. In his report, the referee noted that Article

Fifteenth of the will did create a valid trust, and that, although the Ricker bankruptcy "made it impossible to make the trust operative in its precise terms," the will clearly demonstrated a general intent on the part of the testatrix to devote the residue of her estate to charitable purposes.

Ruling that the trust should not revert to either the heirs-at-law or the trustee in bankruptcy, the referee concluded that the doctrine of cy pres would govern disposition of the testamentary bequest. He found, however, that neither Ricker College nor the Ricker trustees were appropriate recipients of the trust res, since "Mrs. Knox did not direct that the trust income be used for scholarship purposes. Rather, her direction was to use this income for 'general (college) purposes.'" Using this criterion, he formulated his own proposal for the disposition of the res as follows:

The Court can take judicial notice that there are three liberal arts colleges in Maine, each with long established records of academic excellence, each equally reputable and each serving a fair percentage of Maine students, namely Bates, Bowdoin and Colby Colleges. The Referee is satisfied that it would be an appropriate application of the cy pres doctrine under these facts to divide the amount available for distribution under the residuary clause of the Knox will into three equal shares, each of the three above named colleges to receive one share, each to hold the same in trust subject to the same conditions as were set forth in Article Fifteenth of the will of Annie L. Knox. Thus, Bates, Bowdoin and Colby Colleges will each have a permanent trust fund entitled "George P. Knox and Annie L. Knox Memorial Fund" and each of the three may use the income generated by its share of the fund "for such general purposes (of the

---

1. The Attorney General was included as a defendant in a second complaint that was later

consolidated.

respective institution) as the (governing body) of said Institution may determine." The referee also awarded attorneys' fees of $1,000.00 to each of the attorneys in the case, except for the Attorney General and the trustee in bankruptcy. The award was ostensibly based on "the respective contribution in time and research which the various attorneys have made."

In an opinion dated November 3, 1982, the Superior Court upheld the referee's application of cy pres and his finding that cy pres required the determination of a suitable institutional beneficiary or beneficiaries. The court also upheld the award of attorneys' fees. Pursuant to M.R.Civ.P. 53(e)(2) and M.R.Evid. 201, however, the court scheduled a hearing to determine the propriety of the referee's taking judicial notice "that there are three liberal arts colleges in Maine, each with long established records of academic excellence, each equally reputable and each serving a fair percentage of Maine students, namely Bates, Bowdoin and Colby Colleges."

Ricker moved to enlarge the scope of this hearing to include consideration of whether the Ricker proposal came closer than the referee's report to Mrs. Knox's intent, and whether the court should receive evidence prior to ruling on the referee's award of attorneys' fees. The court denied the motion, noting that "Mrs. Knox intended an institutional beneficiary—a functional school. Since this would exclude Ricker, the Court fails to see what interest this Defendant has in the choice of beneficiaries." Following the hearing, the court accepted the report of the referee and entered judgment accordingly.

I.

According to the Restatement (Second) of Trusts,

If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor.

Restatement (Second) of Trusts § 399 (1959). In *In re Estate of Thompson*, 414 A.2d 881, 886 (Me.1980), we listed three prerequisites to the application of the cy pres doctrine. First, the gift must create a valid charitable trust. Second, the specific purpose of the trust must be impossible or impracticable to carry out. Third, the settlor must have had a general charitable intent. On appeal, the trustees of Ricker contend that resort to cy pres was unnecessary because the second prerequisite was not met. They concede Mrs. Knox's general charitable intent and that the will created a valid charitable trust.

We have noted that the "invention of [the cy pres] doctrine is based upon the non-existence of the precise beneficiary of the trust, and the consequent diversion of the fund to the same general charitable purpose for which the trust was created." *Dupont v. Pelletier*, 120 Me. 114, 120, 113 A. 11, 13 (1921). We have also described the doctrine as a "judicial principle for the preservation of a charitable trust when the accomplishment of the particular purpose of the trust is or becomes impossible, impracticable or illegal." *Thompson*, 414 A.2d at 885.

In addressing the second prerequisite to the application of cy pres, therefore, we focus on two issues. Does Ricker College, as it exists in its present form, qualify as the beneficiary? If it does, can it still carry out the general charitable purpose for which the trust was intended?

Cy pres is often applied when a testamentary charitable trust has been established in favor of a corporation or institution that ceases to exist by the time of the testator's death. *First National Bank v. Canton Council of Campfire Girls, Inc.*, 81 Ill.App.3d 932, 935, 37 Ill.Dec. 200, 203, 401 N.E.2d 1293, 1296 (1980). We note

that Ricker was a functioning institution at the time of Mrs. Knox's death, and that a bequest speaks as of the time of the testatrix's death. *See Pushor v. Hilton,* 123 Me. 225, 227, 122 A. 673, 673 (1923). Moreover, while Ricker College is bankrupt, no longer maintains a physical campus, and has no faculty or students, its corporate existence continues. The trustees retain the power to receive, to hold, and to disburse assets. As discussed at oral argument, there is no evidence that Ricker's corporate existence will in any way change or be dissolved in the future. In addition, the Knox will does not suggest a clear attachment to Ricker, the college, as opposed to Ricker, the corporation. *See State v. Rand,* 366 A.2d 183, 196 (Me.1976). Instead, the bequest was made "unto Ricker Classical Institute and Ricker College, a corporation organized and existing under the laws of the State of Maine and maintaining an educational institution at Houlton ...." The Ricker corporation possesses the legal capability of accepting the Knox bequest. We conclude, therefore, that the trust does not fail, and the doctrine of cy pres need not be applied, based upon any want of a qualified, existing beneficiary.

Nevertheless, at oral argument the counsel for Bates, Bowdoin and Colby Colleges argued that Ricker's continuing corporate existence was not necessarily determinative. Instead, they contend, the issue is whether Ricker, in its present form, is capable of carrying out the purpose of the bequest. We agree with that posture of the issue. We emphasize that the Knox will sought to establish a trust fund at Ricker the income from which would be used for "such general purposes of said Institution as the Board of Trustees of said Institution may determine." The language of the will is determinative.

We note that the testamentary language refers to the "general purposes of said Institution," having referred earlier to

"Ricker Classical Institute and Ricker College, *a corporation* organized and existing under the laws of the State of Maine and maintaining an educational institution at Houlton ...." (emphasis added).[2] The referee interpreted the will's language to mean "general (college) purposes." He assumed, therefore, that "the demise of Ricker College as a functional education institution ... made it impossible to make the trust operative in its precise terms." We disagree. We consider instead the relevant general purposes of Ricker to be among those enunciated by the Legislature at various times through Ricker's history: "to promote the cause of education," P. & S.L. 1847, ch. 10; P. & S.L.1887, ch. 90; P. & S.L.1939, ch. 37; P. & S.L.1949, ch. 42; P. & S.L.1965, ch. 139; P. & S.L.1965, ch. 140; P. & S.L.1967, ch. 74; and to furnish "the opportunity for a college education at modest cost to great numbers of deserving youths of Aroostook County." P. & S.L. 1955, ch. 42.

The trustees' proposal to use the trust income to provide scholarships to Aroostook area students is fully consistent with these general purposes. The referee erred in concluding that the trustees could not, without a functioning college, carry out the testatrix's intent. Our decision is fully in accord with the weight of Maine authority, *see Robert W. Traip Academy v. Staples,* 317 A.2d 816 (Me.1974); *Snow v. Bowdoin College,* 133 Me. 195, 175 A. 268 (1934); *Dupont v. Pelletier,* 120 Me. 114, 113 A. 11 (1921). A resort to cy pres would tend to defeat, rather than further, the general charitable intent expressed in the Knox will, *see Grigson v. Harding,* 154 Me. 146, 161, 144 A.2d 870, 878 (1958), and application of the doctrine under the circumstances of this case was therefore error as a matter of law.

## II.

The referee awarded attorneys' fees of $1,000.00 to each of the privately retained

---

**2.** The words "and maintaining an educational institution at Houlton" were merely additional description by which the testatrix meant to identify the devisee.

attorneys in this matter, having ostensibly given "consideration to the respective contribution in time and research which the various attorneys have made." In affirming the award, the Superior Court refused to "second guess" the referee's evaluation of the attorneys' respective contributions. The trustees of Ricker challenge the court's acceptance of the referee's equal allocation of fees among counsel as not reflecting the actual individual contributions of time and research. They argue that the referee should have requested submission of statements by the attorneys providing an account of their individual services.

The Maine Probate Code provides for payment of attorneys' fees out of an estate in controversy "as justice requires." 18-A M.R.S.A. § 1-601 (1981). The court below is vested with broad discretion in determining the award of counsel fees, based upon, among other things, the time and labor invested by attorneys in the case. *Cassidy v. Murray*, 145 Me. 207, 208-10, 74 A.2d 230, 231-32 (1950). While we recognize that the referee in this case chose not to deplete the trust fund through his award of counsel fees, *see Cassidy*, 145 Me. at 210, 74 A.2d at 232, and that he did weigh the attorneys' contributions in terms of both time and research, we conclude that the procedure used to determine the award of attorneys' fees was improper. The court below is entitled to rely upon, and the attorneys are entitled to submit, statements detailing their work in the case. Such statements, submitted in affidavit form or under oath, should have been required by the referee in the first instance. Only then could the Superior Court have made an accurate award, and one fair to the parties as well as to the attorneys.

The entry is:

Judgment vacated.

Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.