**In re BISHOP COLLEGE, Debtor.**

**Duke SALISBURY, Trustee, Plaintiff,**

**v.**

**AMERITRUST TEXAS, N.A., Defendant.**

**Dan Morales, Attorney General of the State of Texas, Intervenor.**

**Bankruptcy No. 387–32332–RCM–7.
Adv. No. 392–3400.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Jan. 26, 1993.

---

Ruth L. Rickard, Dallas, TX, for plaintiff.

Hank Rugeley, Wichita Falls, TX, for defendant.

Rose Ann Reeser, Office of the Attorney General, Austin, TX, for intervenor.

## MEMORANDUM OPINION

ROBERT McGUIRE, Chief Judge.

The following are the Court's Findings of Fact and Conclusions of Law under Bankruptcy Rule 7052 with respect to whether the assets of two charitable trusts established for the benefit of Bishop College ("Bishop College" or the "Debtor") constitute property of the Debtor's Chapter 7 bankruptcy estate, and are therefore subject to turnover pursuant to Sections 542 and 543 of the Bankruptcy Code. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(a), (b), and (d), and § 157(a).[1]

### Factual Background

Debtor, Bishop College, was the beneficiary of two testamentary trusts (collectively, the "Trusts") created by two black alumni of the school, A.E. Holland ("Holland") and Ethel O. King ("King"). Both Trusts were subject to two life estates created in favor of family members. Holland died in 1969, leaving a will which was admitted to probate in Wichita County, Texas by Order dated May 19, 1969. King died in

---

1. All the parties agreed to submit the legal issues relating to entitlement to the trust funds on briefs. No party requested that the Court abstain, though the entitlement issue is determined by state law. Ameritrust Texas, N.A., the trustee for the charitable trusts, denied that this is a core proceeding, however, it did consent to the entry of a final order or judgment by the Bankruptcy Court. (Original Answer of Ameritrust, ¶ 2). 28 U.S.C. § 157(c)(2).

1974. Her last will was admitted to probate in Wichita County by Order dated March 16, 1979. Both wills named First Wichita National Bank, Wichita Falls, Texas as trustee. Later, Ameritrust Texas, N.A. ("Ameritrust") was substituted as trustee in its place.[2] Pursuant to the wills' terms, Ameritrust was directed to liquidate the estates, invest the proceeds in stocks and bonds for the benefit of the beneficiaries, and pay the annual income to Bishop College.[3]

Bishop College filed a voluntary petition under Chapter 11 on April 30, 1987. In August, 1988 the case was converted to a Chapter 7 proceeding. Until the case's conversion, Bishop College was a private college serving predominantly black students, and located in Dallas, Texas. It ceased to operate as an educational institution on August 15, 1988.

It is apparent from the wills, neither Holland nor King anticipated the possibility that Bishop College might cease operating. The wills provided for no gifts over to remaindermen following the bequest to Bishop College. The Debtor is the sole named beneficiary of the wills' residuary bequest. Neither will provided for the Trusts' termination and distribution of assets upon Bishop College's failure. Instead, the wills contemplated annual payments to the Debtor from income trusts, in perpetuity.

Moreover, the wills contain no language earmarking the funds. There are no restrictions placed on the bequest to the Debtor requiring its continued maintenance of a physical campus. While not required by the Trusts' wording, the trusts' resources were used to provide scholarships to minority students. (Plaintiff's trial brief filed December 2, 1992, p. 15 n. 6).

Ameritrust distributed income from the Trusts to Bishop College until August, 1988 when the school ceased functioning as an educational institution, and the case was converted to a Chapter 7 proceeding. At that time Ameritrust refused to make further distributions to the estate on the grounds that the charitable intent of the donors could no longer be fulfilled. The Chapter 7 Trustee at that time made demand that the Trusts be liquidated, and their entire corpus and income be turned over to the estate for the payment of creditors, in accordance with the Bankruptcy Code's priority scheme.

As of June 30, 1992, the corpus of King Bishop College Foundation Trust had a market value of $69,130.24, and a book value of $68,329.73. The undistributed net income after taxes for 1988 was $629.07, 1989 was $2,827.00, 1990 was $2,708.60,

---

**2.** First Wichita National Bank changed its name to MBank, Wichita Falls, Texas, N.A. on October 10, 1984. Effective January 1, 1988, MBank and MTrust Corp., N.A. entered into a substitution agreement pursuant to Texas Revised Civil Statutes, article 548h. The name of MTrust Corp., N.A. was changed to Ameritrust Texas, N.A. on February 27, 1990.

**3.** The terms of the Holland and King wills, relating to the creation of the Trusts, are virtually identical. The relevant paragraphs of the Holland will provide in full as follows:

The Trust herein created shall be for the benefit of Bishop College of Dallas, Texas, and I direct that such trustee shall maintain trusts, designated as the Bishop College Foundation for Bishop College. In administering the Trust I give to the trustee all of the powers granted under the Texas Trust Act as now enforced or as the same may hereafter be amended, and in addition, direct that such trustee shall act without bond.

I expressly direct that the trustee shall, as soon as conveniently possible, without sacrifice to the estate, liquidate my estate, and invest the proceeds in stock and bonds for the beneficiaries (sic) herein named, and at least annually pay the income for such by (sic) the directing authorities of Bishop College.

I expressly direct that the trust herein created with the First Wichita National Bank of the City of Wichita Falls shall include its successors or any bank with which the same may be merged, and I further direct that such proceeds may be paid to the named beneficiaries (sic) or their successors (sic) and I further authorize that the trustee may, from time to time, accept any funds or property that may be contributed to this specific trust by other parties, and administer the same along with the trust estate herein created as fully as if such funds had been available in the creation of such trust.

The King will lacks the language that "proceeds may be paid to named beneficiaries or their successors."

and 1991 was $3,570.00. (Ameritrust Answer, ¶¶ 16 & 17).

As of that same date, the corpus of the Holland Bishop College Foundation Trust had a market value of $63,962.45, and a book value of $63,479.31. The undistributed net income after taxes for 1988 was $549.27, 1989 was $2,488.00, 1990 was $2,354.00, and 1991 was $3,228.00. (Ameritrust Answer, ¶¶ 16 & 17).

On July 1, 1992, the Chapter 7 Trustee brought this adversary proceeding seeking the following: (i) turnover of the trust income and corpus under Sections 542 and 543 of the Bankruptcy Code; (ii) an accounting; (iii) damages relating to Ameritrust's alleged breach of fiduciary duty for failure to distribute trust assets; (iv) declaratory relief; (v) and an avoidance of administrative fees. As reflected in the Agreed Order signed on December 4, 1992, the causes of action have been significantly narrowed. The causes of action now being asserted are for turnover, and a claim for the return of allegedly improper fiduciary fees under the Texas Trust Code.[4]

Pursuant to the Texas Property Code, the Attorney General of the State of Texas has intervened as a Defendant in this proceeding as is required in all disputes involving charitable trusts.

Both Ameritrust and the Attorney General contend that the assets of the Trusts, both corpus and accrued income, are not property of the estate, and that the turnover counts should be denied. Defendants contend that upon Bishop College's ceasing to operate as an educational institution, the rights of the estate to receive distributions from the Trusts ceased. Pursuant to the doctrine of *cy pres*,[5] the De-fendants assert the Trusts should be modified to designate a similar beneficiary to fulfill the charitable intent of the respective settlors of the Trusts. Ameritrust recognizes that this Court is not the appropriate forum to reform the trusts pursuant to the *cy pres* doctrine. In the event the Court determines that the Trusts are not property of the estate, Ameritrust intends to petition the Probate Court in Wichita County, Texas to reform the Trusts to establish a minority student scholarship fund at Midwestern State University in Wichita Falls, Texas. Alternatively, in the event the Court determines that *cy pres* is not applicable, Defendants contend that the assets are subject to a resulting trust for the estate of the settlors, and are not to be distributed to the Chapter 7 Trustee in this case.

The Chapter 7 Trustee asserts that interpretation of the wills requires the Court to find that the settlors intended to benefit Bishop College, irrespective of its terminated status as an educational institution. Despite the fact Bishop College no longer functions, the Chapter 7 Trustee contends that its continued existence as a legal entity makes the doctrine of *cy pres* inapplicable. The Chapter 7 Trustee asserts that as a practical matter, the general charitable purpose of the trust has not failed, because the settlors' general intent can be met by making the trust resources available to the estate for the payment of creditors. He urges the Court, instead of modifying the Trusts, to terminate them for the benefit of the sole named beneficiary of the residuary estate, Bishop College. Termination of the Trusts, he asserts, comports with § 112.-054(a)(2) of the Texas Trust Code[6] and art.

---

4. By Agreed Order signed December 4, 1992, the parties stipulated briefs would be submitted on all parol evidence and § 541 property issues relating to the charitable trusts. Additionally, the parties agreed to continue the evidentiary hearing on issues regarding the propriety of Ameritrust's fiduciary fees. The Court having determined that interpretation of the wills is limited to the four corners of the instruments, finds that parol evidence is inadmissible to construe the wills, and directs its attention to the merits of the case. *Shriner's Hospital for Crippled Children of Texas v. Stahl*, 610 S.W.2d 147

(Tex.1980); *Henderson v. Parker*, 728 S.W.2d 768 (Tex.1987).

5. The phrase *"cy pres"* is the equivalent to modern French *si près*, meaning so near or as near. The intention of the testator is to be carried out as nearly as may be. IV A.W. Scott, *The Law of Trusts*, sec. 399 at 2924–2925 (3d ed. 1967).

6. Section 112.054, Tex.Trust Code, provides in pertinent part:
 Section 112.054. Judicial Modification or Termination of Trusts (a) On the petition of a

1396–6.05, Tex. Non–Profit Corp. Act (Vernon 1990).[7]

### Discussion

■ At its heart, this adversary proceeding requires a determination of the extent of the estate's interest in the charitable trusts. Simply stated, "What property interest did the Debtor possess which can be distributed to its creditors?" The scope of the Debtor's estate is defined by 11 U.S.C. § 541, which limits the estate to property interests held by the Debtor at the time the bankruptcy petition was filed. The Bankruptcy Code does not create property interests. Typically the nature and extent of a debtor's property rights existing as of the petition date are defined by non-bankruptcy law. *In re Steven Smith Home for the Aged, Inc.*, 80 B.R. 678 (Bankr.E.D.Pa. 1987) (debtor's right to proceeds from charitable trust defined by state law); *In re Farmer's Mkt., Inc.*, 792 F.2d 1400 (9th Cir.1986) (debtor's interest in liquor license subject to state law restrictions relating to their transfer); see generally 4 *Collier on Bankruptcy* ¶ 541.01, at 541–10 to 541–13 ("The existence and nature of the debtor's interest in property ... is determined by non-bankruptcy law," usually state law). The bankruptcy estate, insofar as it includes the Trusts' assets, takes them subject to all limitations and conditions that existed on the property, pre-petition. It is that limited value, if any, to which any claims against the estate attach. *In re Schauer*, 62 B.R. 526 (Bankr.D.Minn.1986), aff'd 835 F.2d 1222 (8th Cir.1987); *In re Farmer's Mkt., Inc.*, *supra*, at 1402–1403; 4 *Collier on Bankruptcy* ¶ 541.01 at 541–6 ("To the extent that an interest is limited in the hands of the debtor, it is, therefore, equally limited in the hands of the estate"). The filing of the bankruptcy petition did not expand the Debtor's rights with regard to the trust property. The estate received the trust assets subject to any restrictions imposed by state law, pre-petition.

■ Implicit in the Chapter 7 Trustee's turnover request is the assumption that federal bankruptcy law grants the Trustee greater rights to dispose of property of the bankruptcy estate than the Debtor held under state law. That argument is incorrect. There is no conflict between 11 U.S.C. §§ 542, 543, 704 and state law, which defines the Debtor's rights in the charitable trusts. The Bankruptcy Code does not expressly authorize the Trustee to collect property contrary to the restrictions imposed by state law. Those sections are

---

trustee or a beneficiary, a Court may order that ... the terms of the trust be modified ... or that the trust be terminated in whole or in part, if:

(2) because of circumstances not known to or anticipated by the settlor, compliance with the terms of the trust would defeat or substantially impair the accomplishment of the purposes of the trust.

(b) The court shall exercise its discretion to order a modification or termination under Subsection (a) in the manner that conforms as nearly as possible to the intention of the settlor....

**7.** The Trustee asserts Section 1396–6.05 requires application of trust assets, initially, to the liabilities and obligations of a corporation in the process of dissolution. Section 1396–6.05; however, needs to be considered in conjunction with Section 1396–6.02, Tex. Non–Profit Corp. Act (Vernon 1990). The Chapter 7 Trustee has mistakenly relied upon current versions of the statutes, when, in fact, the amended versions are not controlling. Section 1396–6.02 was amended effective September 1, 1985. That version applied only to non-profit corporations formed on or after the statute's effective date. *Blocker v. State of Texas*, 718 S.W.2d 409 (Tex.App.— Houston [1st Dist.] 1986, writ ref'd n.r.e.). Bishop College was founded well before September 1, 1985, therefore, to the extent applicable, the statutory predecessor of art. 1396–6.02 (art. 1396–6.02 subd. A(3)) would apply. That section provided:

Article 1396–6.02. Application and Distribution of Assets

A. The assets of a corporation in the process of dissolution shall be applied and distributed as follows:

(3) Assets received and held by the corporation subject to limitations permitting their use only for charitable, religious, eleemosynary, benevolent, educational or similar purposes, but not held upon a condition requiring return, transfer or conveyance by reason of the dissolution, together with any income earned thereon, shall be transferred or conveyed to one or more domestic or foreign corporations, societies or organizations engaged in activities substantially similar to those of the dissolving corporation, pursuant to a plan of distribution adopted as provided in this Act.

...

merely "enabling statutes" that give the Trustee the authority to dispose of property if the Debtor would have had the same rights under state law. *In re Schauer, supra* (state law restrictions on debtor's interest in patronage certificates in a farm cooperative were not preempted by section 363(b)(1), 543 or 704 of the Bankruptcy Code. Chapter 7 Trustee could not transfer certificates, absent approval of the farm cooperative); *Cf., In re FCX, Inc.,* 853 F.2d 1149 (4th Cir.1988), *cert. den'd* 489 U.S. 1011, 109 S.Ct. 1118, 103 L.Ed.2d 181 (1989).[8]

 No basis exists under state law for the Chapter 7 Trustee to claim an interest in the income and corpus of the charitable trusts. The Trustee's arguments to the contrary are flawed. First, the Trustee assumes as a proposition that Bishop College, prior to bankruptcy, had an absolute entitlement to the trust funds (including the corpus) regardless of any change in its function. As support for this position the Trustee cites general rules of construction applicable to wills. Ordinarily, an absolute gift of income, absent any provision for the distribution of the trust corpus, constitutes a prima facie absolute gift of the corpus; this, however, is only a prima facie inference, and may be defeated by the contrary intention of the settlors, ascertainable from the language of the will taken as a whole and surrounding circumstances. The creation of a charitable trust necessarily constitutes an exception to the general rule, in that the separation of corpus from income is characteristic of charitable trusts. Page, *The Law of Wills*, chapter 23, § 980, and chapter 28, § 1156. It is a basic tenet of the law of charitable trusts that beneficial charitable interests are inalienable. Trust corpus is characteristically devoted to the accomplishment of a designated charitable purpose for an indefinite period, with the principal to be held intact, unless the trust instrument otherwise permits its immediate application. *Hobbs v. Bd. of Education,* 126 Neb. 416, 253 N.W. 627 (1934); IV A.W. Scott, *The Law of Trusts,* § 365 (3d ed. 1967). It is undisputed that the Bishop College Foundations constitute charitable trusts. Any construction of the instruments recognizing an absolute conveyance of trust assets would be violative of basic principles of charitable trust law and the donors' intent.

To buttress the argument that the wills conveyed an absolute gift of trust income and corpus to the Bishop College Foundations, the Chapter 7 Trustee engaged in a textual analysis of the wills which, while facially appealing, is misguided and without merit. The Chapter 7 Trustee has misconstrued the use of the word "proceeds" in Mr. Holland's will to argue that, at least in that Trust, the corpus could be distributed to Bishop College or its successors.[9] In fact, this provision should be interpreted as providing for distribution of trust income

---

**8.** Because the Court has determined that the Bankruptcy Code's turnover provisions do not expand the Debtor's pre-bankruptcy rights to dispose of the trust property, it is unnecessary to address whether the restriction on transfer of interests in charitable trusts under the Texas Trust Code and common law constitute restrictions under "applicable nonbankruptcy law," within the meaning of section 541(c)(2).

**9.** The cases cited by the Chapter 7 Trustee in support of his contention that the corpus should be distributed to him based on the wills' unrestricted gift of trust income are inapposite. *Burton v. King,* 459 S.W.2d 663 (Tex.Civ.App.—Tyler 1970, writ ref'd n.r.e.); *Gidley v. Lovenberg,* 79 S.W. 831 (Tex.Civ.App., 1904, writ ref'd.); *but see Anderson v. Menefee,* 174 S.W. 904 (Tex.Civ.App.—Ft. Worth, 1915, writ ref'd.). *Burton v. King, supra,* deals with a trust for private beneficiaries, not a charitable trust.

The general rule that an absolute gift of all income from the corpus of an estate may be presumed to have intended a gift of the corpus, as well, applies to private trusts which would otherwise fail by application of the Rule Against Perpetuities. Because charitable trusts may be created in perpetuity, this general rule does not apply. Likewise, *Citizen's National Bank of Meridien v. Longshore,* 304 So.2d 287 (Miss.1974) also involves a private trust and is not properly analogous. *Longshore* involved the termination of a trust by an income beneficiary, when it was impossible for a remainderman to exist. This is not comparable to the circumstances present in the instant case, in which the doctrine of *cy pres* is available. *Hobbs v. Bd. of Education, supra. Hobbs* provides a better and closer analogy. There the Court held that creditors could not reach endowment property held in trust, unless it had been completely withdrawn from the endowment.

to any successor of Bishop College. This interpretation is strengthened by the fact that both wills provide for payment of trust income to Bishop College and are virtually identical in all other provisions. Ms. King's will does not contain the ambiguous language which the Chapter 7 Trustee argues permits distribution of the corpus to Bishop College.

■ If anything, a close textual analysis of the wills suggests that the settlors of the Trusts intended the creation of a permanent fund, the income of which was to be dedicated to educational purposes. Both Trusts were established as "foundations". A "foundation" is defined as: (1) a "permanent fund established and maintained by contributions for charitable, educational, religious, and other benevolent purposes," *Black's Law Dictionary*, (5th ed.); and (2) "a fund given for the permanent support of an institution or a cause," *Webster's Third International Dictionary*.

■ The Trustee's argument that the continued existence of Bishop College as a legal entity is sufficient to maintain the Debtor's entitlement to trust assets, irrespective of the school's closure, ignores Texas law. The Trustee relies upon the unrestricted nature of the charitable gift to Bishop College as demonstrating a lack of charitable intent, and concludes on that basis that the settlors' general intent can be met by making the trust assets available to pay the creditors of Bishop College. This argument is based on a very narrow reading of the wills, discounting Texas law that a gift to an educational institution may be presumed to be a charitable gift for educational purposes.[10] *Blocker v. State, supra;* Restatement (Second) of Trusts, §§ 368, 370 (1959); *Southern Methodist University v. Clayton*, 142 Tex. 179, 176 S.W.2d 749 (1943); *Harrold v. First National Bank of Ft. Worth*, 93 F.Supp. 882 (N.D.Tex.1950); *Boyd v. Frost Nat. Bk.*, 145 Tex. 206, 196 S.W.2d 497 (1946); *Powers v. First National Bank of Corsicana*, 138 Tex. 604, 161 S.W.2d 273 (Comm.App.

1942, opinion adopted). In *Blocker*, the court held that: property transferred to a non-profit organization which is determined to be a public charity is subject to the charity's limitations defined by the organization's purposes; and that no technical words or further manifestations of general charitable intent are necessary to create such a trust. *Also see, In re Farren*, 27 Ohio App.2d 31, 272 N.E.2d 162 (1970).

■ State law relating to charitable trusts militates against the termination of the Bishop College Foundations for the payment of the Debtor's creditors. Texas courts hold charitable trusts in such high regard that the rules of construction are more liberal to sustain them, than they would be if the gifts were to private trusts or individuals. *Powers v. First National Bank of Corsicana, supra* 161 S.W.2d at 282–283 ( . . . "the court's attitude in considering a bequest intended for a charitable purpose should be friendly, not hostile"); *San Antonio Ind. Sch. D. v. Division of World Missions*, 161 Tex. 471, 341 S.W.2d 896 (1960) (charitable trust did not fail where particular charitable purpose impossible to carry out, doctrine of *cy pres* applicable).

■ Under Texas law, where the particular charitable purpose for which the trust was created becomes impossible of achievement or illegal or impracticable, the trust does not fail if the settlor has shown a general intention that his property shall be used for charitable purposes. In such a situation, the court will exercise its *cy pres* power and authorize that the property be applied to some other particular charitable purpose falling within the general intention of the settlor. In selecting the other particular charitable purpose, the court will choose the public charity which is as near as possible to the one designated by the settlor. *Coffee v. William Marshall Rice Univ.*, 408 S.W.2d 269 (Tex.Civ.App.—Houston 1966, writ ref'd n.r.e.); IV A.W. Scott, *The Law of Trusts* sec. 399.2 (3d ed. 1967); Restatement (Second) of Trusts sec.

---

**10.** The Chapter 7 trustee's position is also inconsistent with his recognition that the Bishop College Foundations constitute charitable trusts.

399, 413 (1959); *Scott v. Sterrett,* 234 S.W.2d 917 (Tex.Civ.App.—Dallas 1950, writ ref'd n.r.e.); *Foshee v. Republic Nat. Bk. of Dallas,* 617 S.W.2d 675 (Tex.1981).

■■■ As a matter of law, the wills sufficiently state a general charitable intent in that the Trusts require trust income to benefit educational purposes, thus the first element of *cy pres* is met.[11]

The second element of *cy pres* requires that the particular intention of the settlor "cannot be carried out, or becomes impractical or illegal ...". *Blocker v. State,* 718 S.W.2d at 415. Since Bishop College has failed, there can be no dispute that the second element of *cy pres* is satisfied. The college has ceased educating students, its mere continued existence as a legal entity is insufficient to support a finding that Bishop College in its present form can carry out the general charitable purpose for which the Trusts were intended.

Application of the doctrine of *cy pres* is warranted in the present case. Under the terms of the wills, the settlors manifested a clear intention to create a permanent fund for educational purposes. Though the particular purpose of the testators has failed, their general charitable intent can be carried out through other means.

■■■ Even if the doctrine of *cy pres* is inapplicable, the Chapter 7 Trustee has no claim to the assets of the Bishop College Foundation Trusts. The Restatement (Second) of Trusts provides:

Section 413. Failure of Trusts.

Where the owner of a property gratuitously transfers it upon trust for a charitable purpose and the purpose cannot be accomplished, the transferee holds the trust estate upon a resulting trust for the transferor or his estate, unless:

(a) the doctrine of *cy pres* is applicable, or

(b) the transferor properly manifested an intention that no resulting trust should arise.

If *cy pres* is inapplicable, the trust assets revert to the settlors' estate. Restatement (Second) of Trusts, § 413 (1959); *Brelsford v. Scheltz,* 564 S.W.2d 404 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.).

There is no basis for finding that the Chapter 7 Trustee has an interest in the trust property subject to turnover pursuant to sections 542 and 543 of the Bankruptcy Code, therefore the turnover relief requested in counts I and II of the Chapter 7 Trustee's Complaint are denied.

### ORDER FOR JUDGMENT

Based upon the foregoing Findings of Fact and Conclusions of Law, it is hereby Ordered, Adjudged and Decreed:

(1) That the trust income accruing since the conversion of the Debtor's case to a Chapter 7 proceeding, and the trust corpus of the Holland and King Bishop College Foundations are not property of the Debtor's estate, and therefore not subject to turnover pursuant to sections 542 and 543 of the Bankruptcy Code; and

(2) that Defendants are authorized to take all actions necessary to institute a proceeding in the District Court of Wichita County, Texas to reform the Trusts, in accordance with the doctrine of *cy pres.*

Pursuant to FRCP 58, Judgment will be entered in accordance with the foregoing opinion.

11. The only case cited by the Chapter 7 Trustee in support of affirmance of a charitable gift to a college that, after bankruptcy, no longer maintained a functioning campus is *Freme v. Maher,* 480 A.2d 783 (Me.1984). Though the court in *Freme* disapproved the lower court's rationale that the demise of the college as a functioning institution made the trust provisions of the will inoperative, it interpreted the will consistent with the general educational purpose of the gift. The Maine Supreme Court vacated the earlier judgment and ordered that the trust income be used to provide scholarships to area students for post-secondary schooling. *Freme* does not support the proposition that a charitable gift to a failed educational institution can be used as a fund for the repayment of creditors. The gifts to the Bishop College Foundation Trusts are presumed to be for an educational purpose. *Boyd v. Frost Nat. Bank,* 145 Tex. 206, 196 S.W.2d 497, 505 (1946); *Hobbs, supra.* It would be illegal for the Trustee to pay the trust income for purposes outside the purpose of the charitable beneficiary. *Boyd, supra; Hobbs, supra.*