OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



November 3, 1999

The Honorable Irma Rangel
Chair, Committee on Higher Education
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0138

Re: Whether a public junior college may give funds to a charitable and educational nonprofit corporation (RQ-0047-JC)

Dear Representative Rangel:

You have asked this office whether funds donated by a private donor to a junior college for the restricted purpose of providing scholarships to needy students at the college may, as you describe it, be transferred to a nonprofit foundation "created exclusively for charitable and educational purposes in providing support for the specific College seeking to transfer the funds." Letter from Honorable Irma Rangel, State Representative, to Honorable John Cornyn, Attorney General, at 1 (Mar. 23, 1999) (on file with Opinion Committee) [hereinafter "Request Letter"]. Because such funds were not given as an unrestricted gift but rather are funds impressed with a charitable trust, and hence are not general assets of the junior college, we believe that the trustee of the college may petition a court of competent jurisdiction under section 112.054 of the Property Code for a modification of that trust by which their duties as trustees of these funds would be taken over by the nonprofit corporation, subject to the continuing restriction that the funds may only be used for their original purpose as scholarship funds, if in the opinion of the trustees the administrative costs associated with their retaining control of the funds would "substantially impair the accomplishment of the purposes of the trust." TEX. PROP. CODE ANN. § 112.054(a)(2) (Vernon 1995). Because the nature and purpose of the funds would not be altered by such a modification, in our view the arrangement would not fall afoul of the prohibitions against gifts or grants of public funds to private entities found in article III, sections 51 and 52 of the Texas Constitution. Statutory authorization for such a procedure as we have outlined is to be found in section 11.156 of the Education Code, which vests such gifts in "the board of trustees . . . as trustees for those to be benefitted by the donation," TEX. EDUC. CODE ANN. § 11.156(a) (Vernon 1996), as well as in section 112.054 of the Property Code.

As you explain the matter to us, a benefactor of a public junior college has given funds "to the College for the restricted purpose of providing scholarship money for needy students at the College." Request Letter at 1. A private nonprofit corporation has, since the donor began giving such funds, been established "exclusively for charitable and educational purposes in providing support" to the junior college. Id. The regents and administration of the college, as well as the original donor of the funds, "desire to consolidate the scholarship monies provided by the private

donor within a single fund under the control of the Foundation, rather than have these scholarship monies split between separate funds controlled by the Foundation and by the College." *Id.* at 2.

The attorney for the junior college has expressed certain concerns regarding the legality of such a consolidation, on the assumption that "the scholarship monies gifted to the College are now technically assets of the College." *Id.* The attorney is concerned with the question of whether such consolidation may violate the constitutional provisions regarding the gift of public funds to private entities, and whether it "may involve an improper circumvention of laws governing decision-making and accessibility of information regarding funds of a public junior college." *Id.* In light of the college's attorney's questions about the proposed consolidation, you ask whether "such a transfer of scholarship monies" is legally permissible, and whether it would be so "without the consent of the original donor." *Id.*

As to the question of the original donor's consent, we note as a preliminary matter that the funds about which you ask appear to be prior charitable gifts of the donor, rather than a revocable trust. The donation of such funds to a charitable organization is "deemed a gift to the charitable purpose and objects of the corporation. . . . Because a charitable corporation is organized for the benefit of the public, and not for private profit or its own benefit, the public has a beneficial interest in all the property of a public benefit, non-profit corporation. Such a corporation has legal title to the property but may use it only in furtherance of its charitable purposes." *Blocker v. State*, 718 S.W.2d 409, 415 (Tex. App.–Houston [1st Dist.] 1986, writ ref'd n.r.e.). Accordingly, legal title has passed from the donor to the trustees of the junior college. Section 11.156 of the Education Code, which governs junior college districts, is to the same effect. It reads in relevant part:

> (a)    A conveyance, devise, or bequest of property for the benefit of the public schools . . . vests the property in . . . the board of trustees of the . . . district . . . *as trustees for those to be benefited by the donation.*
>
> (b)    The funds or other property donated or the income from the property may be spent by the trustees:
>
> > (1)    for any purpose designated by the donor that is in keeping with the lawful purposes of the schools for the benefit of which the donation was made . . . .

TEX. EDUC. CODE ANN. § 11.156 (Vernon 1996).

In this instance, you inform us, the consolidation of the funds would be subject to the restriction originally placed upon them by the donor. Accordingly, because the funds will be used for the designated purpose and for the benefit of those for whom it was created, the trustees, who

hold the legal title to the fund, need not seek or obtain the consent of the original donor to petition to substitute trustees.

Because the donated funds are impressed with a charitable trust, they are not general assets of the college so as to implicate the constitutional prohibition against giving public money to private parties. Restricted funds such as these are impressed with a charitable trust; the college's legal title to them is subject to an inalienable beneficial interest. *See Salisbury v. Ameritrust Texas (In re Bishop College)*, 151 B.R. 394, 399 (Bankr. N.D. Tex. 1993) ("It is a basic tenet of the law of charitable trusts that beneficial charitable interests are inalienable.").

In the *Bishop College* case, a college in Dallas went bankrupt in the late 1980s. The Chapter 7 trustee of the bankruptcy estate asserted that two testamentary trusts that had been set up to benefit the college were property of the bankruptcy estate subject to turnover for the purpose of satisfying the estate's creditors. *See Bishop College*, 151 B.R. at 395-96. This office, intervening in the proceeding "as is required in all disputes involving charitable trusts," argued that "the assets of the Trusts, both corpus and accrued income, are not property of the estate." *Id.* at 397. The court agreed, noting the "high regard" in which Texas courts hold charitable trusts, *id.* at 400, and concluded that the trusts were subject to reformation under the equitable doctrine of cy pres, which permits such reformation of charitable trusts when the particular intentions of the settlor "'cannot be carried out, or become impractical or illegal.'" *Id.* at 401 (quoting *Blocker*, 718 S.W.2d at 411 n.1).

The teaching of the *Bishop College* case, in our view, is that charitable gifts are not simply the property of the entity or person to whom they are given in trust. Rather, what is salient about such gifts is their charitable nature. Such funds do not belong to the trustees, though the trustees may hold the legal power of their disposition. They may be disposed of only "in furtherance of . . . charitable purposes." *Blocker*, 718 S.W.2d at 415.

Because these charitable gifts are trust assets, they are subject to reformation by a court of competent jurisdiction pursuant to section 112.054 of the Property Code. In such a proceeding, "the attorney general is a proper party and may intervene." TEX. PROP. CODE ANN. § 123.002 (Vernon 1995). In this instance, should the trustees of this college believe that, absent consolidation of these funds, the accomplishment of the purpose of the trust would be "substantially impair[ed]," they may petition the court to order that they should be replaced as trustees of the scholarship funds in question here — that is to say, of the funds already given by the donor subject to the restriction that they be used for scholarships — by the trustees of the foundation. *Id.* § 112.054. In such a substitution of trustees, the college will be giving up nothing save the duty of trusteeship over these particular funds, and hence no gift of public moneys within the contemplation of article III, sections 51 and 52 is involved.

We caution that our conclusion here is limited to the facts before us, in which the college seeks consolidation of funds impressed with a charitable trust to which it holds legal title with other such charitable trust funds held by a nonprofit foundation. We do not intend to suggest that the

college could give or grant monies from its general operating funds to such a foundation, or that such a grant would be permissible under article III, section 51 or 52. Nor do we intend to suggest that the board of trustees' handling of these funds in its capacity as trustee is not subject to any other constitutional or statutory provisions governing uses of funds.

As to the attorney's other concerns with respect to "an improper circumvention of laws governing decision-making and accessibility," *see* Request Letter at 2, in our view if such a purpose were manifest, the court in the exercise of its equitable powers could refuse the petition to substitute trustees under section 112.054. Whether there might be such a purpose in any particular case would be a question of fact upon which we cannot opine in the opinion process, and you do not suggest that there is such a purpose in the instant case.

While your letter references the Public Funds Investment Act, chapter 2256 of the Government Code, it appears inapposite here, because the proposed transaction involving these funds is not in the nature of an investment. On the other hand, the Open Meetings Act, chapter 551 of the Government Code, is of concern, because it applies to the board of trustees of a junior college district. *See* Tex. Att'y Gen. Op. No. JM-340 (1985) at 3 (trustees of junior college district are trustees of school district for Open Meetings Act purposes). Accordingly, final decisions of the trustees made about public business, in this instance the disposition or transfer of trust assets, must be made in accordance with the strictures of the Open Meetings Act.

We note further that the board of trustees of a junior college district is subject to the Public Information Act, chapter 552 of the Government Code, and must comply with that Act in responding to requests for information about the funds and any board actions regarding them. *See generally* Tex. Att'y Gen. Op. No. JM-575 (1986) at 1-2 (concluding that records of state colleges and universities concerning gifts, grants, and public funds are public records subject to statutory predecessor of Public Information Act); *see also* Tex. Att'y Gen. ORD-485 (1987) (applying statutory predecessor of Public Information Act to junior college records).

In summary, then, funds donated to a junior college for the restricted purpose of providing scholarships to needy students of the college are impressed with an inalienable charitable trust, and as such are not general assets of the junior college. Accordingly, should the trustees of the junior college as trustee of these funds view the administrative costs associated with their retaining control of the funds as substantially impairing the accomplishment of the trust purpose, the trustees may petition a court of competent jurisdiction to modify the trust under section 112.054 of the Property Code, substituting as trustees over the funds the trustees of a nonprofit corporation created to provide support to the college in question, subject to the continuing restriction that the funds may only be used for their original purpose as scholarship funds. Because of the trust impressed upon these funds, the constitutional restrictions on the donation of public money or credit to a private entity would not be implicated by such a consolidation. However, any grant of general college funds by the college's trustees to the foundation would implicate such constitutional questions. Laws concerning public decision-making and accessibility of information concerning public funds, such as the Open Meetings and Public Information Acts, do not forbid such a transaction.

## S U M M A R Y

Funds donated to a junior college for the restricted purpose of providing scholarships to needy students of the college are impressed with an inalienable charitable trust, and as such are not general assets of the junior college. Accordingly, should the trustees of the junior college as trustee of these funds view the administrative costs associated with their retaining control of the funds as substantially impairing the accomplishment of the trust purpose, the trustees may petition a court of competent jurisdiction to modify the trust under section 112.054 of the Property Code, substituting as trustees over the funds the trustees of a nonprofit corporation created to provide support to the college in question, subject to the continuing restriction that the funds may only be used for their original purpose as scholarship funds. Because of the trust impressed upon these funds, the constitutional restrictions on the donation of public money or credit to a private entity would not be implicated by such a consolidation. However, any grant of general college funds by the college's trustees to the foundation would implicate such constitutional questions. Laws concerning public decision-making and accessibility of information concerning public funds, such as the Open Meetings and Public Information Acts, do not forbid such a transaction.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

James E. Tourtelott
Assistant Attorney General - Opinion Committee