**Jean L. BLOCKER, Individually and as President, Director and Trustee of the Houston Conservatory of Music, a Non-Profit Charitable Corporation, et al., Appellants,**

v.

**The STATE of Texas, Appellee.**

**No. 01–85–0855–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 25, 1986.

Rehearing Denied Oct. 23, 1986.

Mark W. Owen, Owen, Jones & Bogart, Elgin, for appellant.

Jim Mattox, Atty. Gen., Jack Hightower, First Asst. Atty. Gen., Austin, Mary F. Keller, Executive Asst. Atty. Gen., for Litigation, Deborah Herzberg Loomis, Chief, Ins., Banking & Securities Div., John R. Vasquez, Asst. Atty. Gen., Chief, Charitable Trusts Section, Teryl C. Whitfield, Asst. Atty. Gen., Austin, for appellee.

Before LEVY, DUGGAN and DUNN, JJ.

## OPINION

LEVY, Justice.

■ This is an appeal from an action brought by the Attorney General of Texas to prevent abuse of a charitable trust, pursuant to Tex.Rev.Civ.Stat.Ann. art. 4412a (Vernon 1986). The trial court entered judgment declaring a 1984 deed, purportedly conveying property of a charitable corpo-

ration to a private estate, void *ab initio* and awarded title and possession of the property and certain personalty to a newly constituted charitable organization, impressed with a public charitable trust in perpetuity under the *cy pres* doctrine.[1]

The appeal is before this Court on stipulated facts.

The Houston Conservatory of Music ("HCM") was granted a Texas charter on May 25, 1934. The corporation was created for the purpose of teaching music and its allied arts by C.A. Hammond, Ora B. Hammond, and their son, Mozart B. Hammond. On October 14, 1935, the charter of the corporation was amended to provide "that this corporation shall be non-profit-making in character and shall be maintained and operated strictly for the purpose of teaching the Youth of this land music and its allied arts." Its charitable identity was thus permanently and irrevocably established. *See, e.g., Southern Methodist University v. Clayton,* 142 Tex. 179, 176 S.W.2d 749, 750 (1943); *Lightfoot v. Poindexter,* 199 S.W. 1152, 1167 (Tex.Civ.App.— Austin 1917, writ ref'd). The corporation had no members. On November 15, 1939, HCM was granted a federal tax exemption retroactive to 1934. Such exemption was effective "so long as there is no change in the form of the organization, your purposes or methods of operation." HCM was also exempt from state and local property taxes. The record indicates that the charitable nature of HCM was apparently relied on by third parties who made donations to HCM.

On August 12, 1941, Mozart B. Hammond ("Hammond") deeded property on Fannin Street in Houston to HCM. HCM agreed to assume payment of a vendor's lien note executed by Hammond. On March 29, 1950, HCM acquired property at 3614 Montrose in Houston, and shortly thereafter, HCM sold the Fannin Street location.

HCM conveyed the Montrose location on July 3, 1963, and following the sale, HCM acquired the current site on Milford Street, also in Houston. It was this site on Milford that HCM purportedly transferred to the estate of Mozart B. Hammond on May 4, 1984, by the deed which was declared void. No consideration for the transfer passed to HCM.

Sometime prior to March 12, 1984, Jean Blocker and Allison Frank became directors of HCM. On that date, a vacancy was declared on the board due to the earlier death of Mozart B. Hammond. The two remaining directors, Blocker and Frank, voted to expand the board to four members and to elect Miriam Owen and Betsy Nalle as directors.[2] The board determined that the only substantial assets of HCM were the HCM Milford site and the musical instruments located therein. Upon determining that neither the articles of incorporation nor the bylaws specifically provided for the disposition of these assets, the directors unanimously voted to dissolve HCM, pay the liabilities of the corporation, and distribute any remaining assets to the Hammond estate.

Hammond had died in 1982 at the age of 70. The terms of his Will provided in part that "Miriam Blocker, Allison Blocker, and Betsy Blocker, share and share alike, all the property, real, personal and mixed, of which I may be seized and possessed at the time of my death after the payment of said debts and the expense of probating this Will, to be owned by them in fees simple and held or disposed of, as they may wish

---

1. *Cy pres* is equitable power authorizing a court to effectuate the *general* charitable purpose of a testator when his *particular* intention cannot be carried out, or becomes impractical or illegal, whereupon the court may direct the trust funds or property be expended or utilized in a charitable manner as near (*cy pres*) to the donor's intent as possible. *See Wooten v. Fitz-Gerald,* 440 S.W.2d 719 (Tex.Civ.App.—El Paso 1969, writ ref'd n.r.e.); *Coffee v. William Marsh Rice University,* 408 S.W.2d 269, 285 (Tex.Civ.App.— Houston [1st Dist.] 1966, writ ref'd n.r.e.).

2. Appellant Lee Blocker was Mozart B. Hammond's first cousin and executor of his will. Jean L. Blocker is his wife. Appellants Allison Frank, Betsy Nalle, and Miriam Owen are their daughters and beneficiaries under Hammond's will.

or deem practical." This will was offered for probate in Harris County on May 3, 1984, two months after the board action to dissolve HCM and one day before the effective date of the deed of the HCM site from the corporation to the Hammond estate.

By their sole point of error, appellants contend that the trial court erred in declaring void the deed conveying the Milford property to the Hammond estate. The contention involves interpretation of the dissolution and distribution section of the Texas Non-Profit Corporation Act, Tex.Rev.Civ. Stat.Ann. art. 1396–6.02 A (Vernon 1980) ["TNPCA"][3]. It provides as follows:

Art. 1396–6.02. Application and Distribution of Assets

A. The assets of a corporation in the process of dissolution shall be applied and distributed as follows:

(1) All liabilities and obligations of the corporation shall be paid, satisfied and discharged; in case its property and assets are not sufficient to satisfy or discharge all the corporation's liabilities and obligations, the corporation shall apply them so far as they will go to the just and equitable payment of the liabilities and obligations.

(2) Assets held by the corporation upon condition requiring return, transfer or conveyance, which condition occurs by reason of the dissolution, shall be returned, transferred or conveyed in accordance with such requirements.

(3) Assets received and held by the corporation subject to limitations permitting their use only for charitable, religious, eleemosynary, benelovent, educational or similar purposes, but not held upon a condition requiring return, transfer or conveyance by reason of the dissolution, together with any income earned thereon shall be transferred or conveyed

to one or more domestic or foreign corporations, societies or organizations engaged in activities substantially similar to those of the dissolving corporation, pursuant to a plan of distribution adopted as provided in this Act.

(4) Other assets, if any, shall be distributed in accordance with the provisions of the articles of incorporation or the bylaws to the extent that the articles of incorporation or by-laws determine the distributive rights of members, or any class of classes of members, or provide for distribution to others.

(5) Any remaining assets may be distributed to such persons, societies, organizations or domestic or foreign corporations, whether for profit or not for profit, as may be specified in a plan of distribution adopted as provided in this Act.

Appellants contend that their actions were authorized under art. 1396–6.02 A(1) and (5), and that "there was no trust of any sort attending the corporation's ownership of the Milford property," apparently on the theory that a charitable corporation owes no duty to donors to apply charitable donations upon dissolution to the charitable purposes of a corporation.

The State asserts that the actions of the directors were clearly governed by TNPCA art. 1396–6.02 A(3) and that HCM was a charitable trust. The failure of the directors to comply with art. 1396–6.02 A(3), and their actions in conveying the property to the Hammond estate, under which will three directors were individual beneficiaries, are described as breaches of fiduciary duty, properly remedied by the trial court imposing a constructive trust and by applying the doctrine of *cy pres* to form a new organization to continue the public trust.

---

**3.** Paragraphs (3), (4), and (5) of this Act have been superceded by an amendment effective September 1, 1985, and applicable only to corporations formed thereafter. It provides generally that the remaining assets of a charitable corporation in process of dissolution, after debts are paid and conditionally held property is returned or transferred, shall be distributed only to tax exempt organizations pursuant to a plan of distribution adopted as provided in the Act, unless otherwise provided by the corporation's articles of incorporation. "Any distribution by the court shall be made in such manner as, in the judgment of the court, will best accomplish the general purposes for which the corporation was organized." See the newly effective art. 1396–6.02 A(3), TNPCA.

A brief *amicus curiae,* filed by the reconstituted Houston Conservatory of Music, now entitled the "New Conservatory," essentially supports the State's position, emphasizing the alleged breaches of fiduciary duty and urging public policy considerations in enforcing non-distribution constraints to prevent abuse of charitable trusts.

The parties assert that this Court is bound by the stipulation of facts and is without authority to draw any inferences or find any facts not embraced in the agreement, unless as a matter of law such inferences are necessarily compelled by the facts agreed upon. *See Hutcherson v. Sovereign Camp, W.O.W.,* 112 Tex. 551, 251 S.W. 491 (1923).

Appellants contend that the directors' action was justified under TNPCA art. 1396–6.02 A(1), which provides for application and distribution of the assets of a dissolving nonprofit corporation.

■ There is no showing either in the stipulations or otherwise in the record that the corporation had any debts or other obligations to which the transfer of the Milford property was applied. Appellants do not contend that the property was applied to any obligation, but regard the transaction as "compensation" deserved in equity for the effort, economic support, and years Hammond dedicated to the HCM; that is, in the nature of a posthumous reward recognizing his service. This cannot properly be regarded as the type of "obligation" contemplated by art. 1396–6.02 A(1). Although the directors' actions may have been in part so justified at some point, clearly their contention does not apply to their distributing assets remaining after obligations had been met, two years after the death of Hammond. A more logical posthumous recognition of his public service would surely be to continue the charitable trust he helped to establish and maintain, such socially beneficent purpose being more consistent with the declared educational objectives of the HCM than its dissolution for private gain.

Appellants also contend that the actions are justified under the following provision:

Any remaining assets may be distributed to such persons, societies, organizations or domestic or foreign corporations, whether for profit or not for profit, as may be specified in a plan of distribution adopted as provided in this Act.

*Id.,* art. 1396–6.02 A(5).

■ The structure of the Act reflects that this final paragraph applies only when the first four paragraphs have been satisfied.

■ It is undisputed that the property was initially conveyed to HCM without limitation requiring return, transfer, or conveyance in the event of dissolution. Therefore, art. 1396–6.02 A(2) is not applicable. Nor is it contended that the HCM had provisions determining distribution in the event of dissolution in the articles of incorporation or the by-laws. Thus, article 1396–6.02 A(4) is inapplicable. Paragraph (5) effectively allows the directors, in their unrestricted discretion, to distribute assets remaining not subject to the preceding four application-and-distribution provisions. It follows that no breach of fiduciary duty could occur if the distribution is properly implemented under this paragraph. The core of the argument addresses the question whether the distribution plan adopted was subject to the provisions of article 1396–6.02 A(3), consequently authorizing the trial court's judgment and actions.

Appellants' primary contention is that, since the assets received and held over the years were not subject to limitations on their use, paragraph (3) does not apply. Texas courts have not yet directly addressed this point.

The California Supreme Court considered a similar factual situation. *In re Los Angeles County Pioneer Society,* 40 Cal.2d 852, 257 P.2d 1, *cert. denied,* 346 U.S. 888, 74 S.Ct. 139, 98 L.Ed. 392 (1953). In that case, members of a non-profit corporation in voluntary dissolution sought distribution of the assets to themselves. The California Court held that the articles of incorporation

provided that the society's purpose was the "[c]ommmemoration of historical events and the collection and preservation of data of historical interest [which] are for the education and recreational benefit of the community as a whole and are recognized charitable purposes." *Id.,* 257 P.2d at 5. "[I]n cases where . . . property is conveyed without restriction to a charitable corporation . . . the charitable intent of the donor is ascertained by reference to the charitable purposes of the donee." *Id.* at 9. The Court further reasoned that an *inter vivos* gift made by a member "to a society organized for a charitable purpose *without a declaration of the use* to which the gift is to be put is given in trust to carry out the objects for which the organization was created." *Id.* at 6 (emphasis added). "[D]eviations from the purposes stated in [the] articles are thus subject to the same corrective measures that would be taken against a trustee of a charitable trust that similarly refused to carry out its duties." *Id.* at 6. The Court "should appoint a successor trustee to carry out the charitable intent of the donor whether the charitable purpose is found in the terms of the conveyance to the corporation or in the articles thereof, or whether the failure of the corporation is through dissolution or other disqualification." *Id.* at 9.

The Nebraska Supreme Court, *In re Harrington's Estate,* 151 Neb. 81, 36 N.W.2d 577 (1949), reached a similar conclusion. The Court stated that:

[A] gift, donation, or bequest by name, without further restriction or limitation as to use, to a corporation organized and conducted solely for charitable purposes, will be deemed to have been made for the objects and purposes for which the corporation was organized. . . . [A] gift to a charitable corporation is equivalent to a bequest to a charitable trust, and will ordinarily be governed by the same rules. . . . In other words, the bequest at bar was in effect a gift to the objects and purposes of [the] corporation, and not to the corporation itself. It was in legal effect a charitable donation impressed with a public trust specifically imposed by [the] articles of incorporation.

*Id.* 36 N.W.2d at 582 (citations omitted).

Texas courts have apparently not yet adjudicated any cases addressing dissolution under the statute. However, in a Texas case decided prior to the California and Nebraska decisions, our Supreme Court made an extensive and scholarly analysis of Texas jurisprudence on charitable trusts vis-a-vis historical origins and applications by other jurisdictions. In *Boyd v. Frost National Bank,* 145 Tex. 206, 196 S.W.2d 497 (1946), the Supreme Court considered a testamentary trust established for general charitable purposes, where the appointed trustee was given unfettered discretion in determining beneficiaries of the trust. In reaching its holding that the trust was valid, the Court observed that Texas has a long history of preference for liberally upholding charitable trusts, often contravening the majority of jurisdictions, and broadly favoring charitable endeavors. The Court, quoting a New Jersey decision, stated:

A gift to a charitable institution or society will be presumed to be a charitable gift, though no purpose is named, and such institution or society will be presumed to hold such gifts in trust for those charitable purposes for which it exists.

*Id.,* 145 Tex. at 220, 196 S.W.2d at 505 (citation omitted). The single dissent did not argue against the policy statements, but rather with the difficulty in determining the beneficiaries of, and enforcing for the public, a general charitable purposes trust. Yet the facts of the case at bar would probably satisfy the dissent that an enforceable and specific public charitable trust exists. The dissent stated that:

[B]efore the Attorney General is authorized to sue to enforce a charity, it must be so public in nature or character as to be of interest to the entire public or the public in general. A charity for the orphan[ed] children of a state is a public charity, but a charity for the orphan[ed]

children of deceased Masons, ... is not a public charity.

*Id.* at 511 (Slatton, J., dissenting) (citations omitted).

In the case at bar, the articles of incorporation specifically provided that the purpose of the corporation was the "teaching of the Youth of this land music and its allied arts." Education, both by the very terms of article 1396–6.02 A(3) and by general recognition as being for the advancement of society, is considered a charitable purpose. *See, e.g., Boyd,* 145 Tex. at 214, 196 S.W.2d at 502; *Coffee v. William Marsh Rice University,* 408 S.W.2d at 275.

■ We conclude that property transferred unconditionally to a non-profit corporation, whose purpose is established as or determined to be a public charity or an educational facility, is nevertheless subject to implicit charitable or educational limitations *defined by the donee's organizational purpose* and within the meaning of the statute, where no express limitation to the contrary is stated in the transfer; i.e., the transferred property is deemed a gift to the charitable purposes and objects of the corporation. No technical words or further manifestations of general charitable intent are necessary in order to create such a trust. *See Wooten v. Fitz-Gerald,* 440 S.W.2d at 723. Because a charitable corporation is organized for the benefit of the public, and not for private profit or its own benefit, the public has a beneficial interest in all the property of a public benefit, nonprofit corporation. Such a corporation has legal title to the property but may use it only in furtherance of its charitable purposes.

■ The property deeded by Hammond to HCM, without any express or contrary limitation, was nevertheless subject to the implicit limitation of use for educational purposes within the meaning of paragraph (3) by reference to the stated corporate purposes. The property was used as collateral, before being sold, for the purchase of another piece of realty, in turn used to purchase the piece of property remaining at dissolution. This latter property was purchased for consideration furnished by the corporation and was, of necessity, subject to the limitations imposed on the corporation by the terms of its own articles of incorporation.

■ We hold that the real property and personalty were assets received and held by the corporation, whether from donation or purchase, subject to limitations permitting their use only for educational purposes, *by reference to the stated purposes set forth in the articles of incorporation.* They were not purchased or donated subject to condition requiring their return or transfer elsewhere if the corporation should later dissolve. As such, they fall squarely within the provisions of article 1396–6.02 A(3). We further hold that the acceptance of such assets from donors established a charitable trust for the declared purposes as effectively as though the assets had been accepted subject to an express limitation providing that the gift was held in trust solely for such charitable purposes. *Pacific Home v. Los Angeles County,* 41 Cal.2d 844, 264 P.2d 539, 542 (1953).

■ The directors were, accordingly, under a statutory duty to distribute the remaining assets to charitable organizations pursuing similar purposes. Instead, they attempted to distribute the corporate assets indirectly through the Hammond estate to three of the four directors, for their personal gain. This necessarily constitutes a breach of their fiduciary duty. *See Peterson v. Greenway Parks Home Owners Association,* 408 S.W.2d 261, 265–67 (Tex. Civ.App.—Dallas 1966, writ ref'd n.r.e.). Article 1396–6.02 A(3) of the TNPCA required the directors of HCM to transfer its assets upon dissolution to entities engaged in activities substantially similar to those of HCM. To permit the transfer of donated or acquired assets to non-charitable entities would defeat both the intent of donors and the purposes to which such assets were dedicated upon their acquisition, and permit the directors to profit from the dissolution of the charity. It seems fair to conclude

that appellant's interpretation of 6.02 A(3) would encourage the dissolution of ongoing charities and the distribution of assets, directly or obliquely, to the directors serving at the time of dissolution.

 The State contends that "[b]y their very incorporation for purely charitable and benevolent purposes [charitable corporations] have made a contract with the State and with the beneficiaries named in the charters effectually constituting those in charge of the enterprise *trustees of an express trust, and their charters in their last analysis and in their legal effect become declarations of trust." Santa Rosa Infirmary v. City of San Antonio,* 259 S.W. 926, 935 (Tex.Comm'n App.1924, judgment adopted) (emphasis added). We agree. This contention, and the case cited, confer additional authority for our deducing the same conclusions reached by the California and Nebraska courts: the articles of incorporation in the case at bar established an organization constituting a public charitable trust, in perpetuity, enforceable and subject to the same corrective measures available to protect any other charitable trust in the event of fiduciary breach by its directors. Because HCM was incorporated for purely educational, and therefore charitable, purposes, it functioned as a public charity whose directors managed the charity and its assets as trustees of an express trust. *Id.* at 935.

Thus, it would fall to the Attorney General as a representative of the State to take action to remedy the "use or appropriation of the trust estate ... for purposes of private gain or ... [for purposes] ... inconsistent with their charter provisions." *Id.* at 935. Imposition of a constructive public charitable trust upon breach of a fiduciary relationship is a well established remedy for the breach. *See Slay v. Bennett Trust,* 143 Tex. 621, 640, 187 S.W.2d 377, 388 (1945); *Harvey v. Casebeer,* 531 S.W.2d 206, 207 (Tex.Civ.App.—Tyler 1975, no writ); *Horton v. Harris,* 610 S.W.2d 819, 822 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r.e.).

Because our law favors the protection and preservation of charitable trusts, the trial court properly impressed the assets of the dissolved HCM with a public charitable trust in perpetuity and correctly applied the doctrine of *cy pres,* as embodied in art. 1396–6.02 A(3) of the TNPCA, to transfer the assets to the "New Conservatory," an organization dedicated to a similar, if not identical, purpose.

We overrule the point of error. The judgment of the trial court is affirmed.