TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00558-CV






Greg Abbott, Attorney General of the State of Texas, Appellant


v.


Blue Cross and Blue Shield of Texas, Inc.; Group Life and Health Insurance Company;
Group Medical and Surgical Services; Rio Grande HMO, Inc.; Healthcare Benefits,

Inc.; Dental Benefits, Inc.; Motiva, Inc.; Comstar Communications, Inc.;

Arizona/Texas International, Inc.; Custom General Agency, Inc.;

and Texcare HMO, Inc., Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT

NO. 9613907, HONORABLE JOSEPH H. HART, JUDGE PRESIDING





O P I N I O N




 The Texas Attorney General, appellant, brought suit in district court (1) against appellee
Blue Cross and Blue Shield of Texas, Inc. ("Blue Cross/Texas") and others (2) opposing a proposed
merger between Blue Cross/Texas and Healthcare Service Corporation of Illinois, doing business
as Blue Cross and Blue Shield of Illinois ("Blue Cross/Illinois"), asserting, inter alia, that Blue
Cross/Texas is a common-law charity that must preserve its assets for charitable purposes and the
merger is prohibited by the Texas Non-Profit Corporation Act. (3) After trial and after the district court
apprized the parties by letter of his decision, but before the court rendered a final judgment, the
parties partially settled their dispute, allowing Blue Cross/Texas and Blue Cross/Illinois to merge
and agreeing that, if Blue Cross/Texas is held to be a common-law charitable corporation, the
merged entity will ultimately pay to one or more charitable trusts or foundations designated by the
attorney general the sum of $350,000,000 plus interest. (4) The district court's final judgment holds
that Blue Cross/Texas is not a charity. The Attorney General appeals, presenting one issue to this
Court: whether the district court erred in holding that Blue Cross/Texas is not a common-law
charitable corporation. (5) We will affirm the district-court judgment.


FACTUAL BACKGROUND


 For all practical purposes, the concept of what is now generally known as group
health insurance began in 1929 when representatives of Baylor Hospital in Dallas created a prepaid
hospital service plan known as the "Baylor Plan." Initially devised to provide group hospital
insurance only to Dallas public school teachers seeking treatment at Baylor Hospital, the Baylor Plan
proved successful and was extended to provide coverage to other employment groups seeking
treatment at other hospitals. The Baylor Plan apparently operated without any state regulation; by
contract the individual participants would pool a small sum of money each month from which the
hospital expenses of all contributors would be paid. See 25 Years of Progress in Hospital Care
Prepayment, American Hospital Association (1955) (The 25th Anniversary Year Brochure).

 In 1939, the 46th Texas Legislature acted to allow corporations to provide group
hospital services. Act of May 2, 1939, 46th Leg., R.S., ch. 1, §§ 1-16, 1939 Tex. Gen. Laws 123,
repealed by Act of June 7, 1951, 52d Leg., R.S., ch. 491, § 4, 1951 Tex. Gen. Laws 868, 1095. 
("House Bill 191"). House Bill 191 authorized corporations to be created "for the purpose of
establishing, maintaining and operating a nonprofit hospital service plan, whereby hospital care may
be provided by [the] corporation through an established hospital or hospitals. . . with which [the
corporation] has contracted for such care . . . ." Id. § 1 at 123. H.B. 191 was effective May 10, 1939. 
Id. at 126. Corporations organized pursuant to House Bill 191 were to be subject to the supervision
of the State Insurance Commission and Board of Insurance Commissioners. See id. §§ 3, 7-8, 12-13,
15 at 124-26. (6)

 Less than two weeks later, on May 23, 1939, articles of incorporation for Blue
Cross/Texas were signed. (7) The articles were approved by the Texas Secretary of State, who issued
Blue Cross/Texas's corporate charter on June 2, 1939. Blue Cross/Texas operated continuously until
its merger with Blue Cross/Illinois in 1998. Under the terms of the merger, Blue Cross/Illinois is
the surviving merged entity.

 Throughout its almost sixty-year existence, Blue Cross/Texas's only purpose was to
operate a nonprofit hospital service plan under chapter 20 of the Texas Insurance Code or its
predecessor. See Tex. Ins. Code Ann. arts. 20.01-.21 (West 1981 & Supp. 2001).


STANDARD OF REVIEW


 The parties disagree as to the standard this Court should follow in reviewing the
district-court judgment. The district court filed findings of fact and conclusions of law. See Tex.
R. Civ. P. 296-298. The Attorney General argues that this case was tried on stipulated facts and
should be reviewed as an "agreed case." See Tex. R. Civ. P. 263. "An agreed statement of facts
under rule 263 is similar to a special verdict; it is the parties' request for judgment under the
applicable law." State Farm Lloyds v. Kessler, 932 S.W.2d 732, 735 (Tex. App.--Fort Worth 1996,
writ denied) (citing Chiles v. Chubb Lloyds Ins. Co., 858 S.W.2d 633, 634 (Tex. App.--Houston [1st
Dist.] 1993, writ denied)). If this is a rule 263 agreed case, the only issue on appeal is whether the
district court properly applied the law to the agreed facts. See id.; Chiles, 858 S.W.2d at 635. In
such instance, this Court would be limited in our consideration to those agreed facts. See Sharyland
Water Supply Corp. v. Hidalgo County Appraisal Dist., 783 S.W.2d 297, 298 (Tex. App.--Corpus
Christi 1989), aff'd sub nom. North Alamo Water Supply Corp. v. Willacy County Appraisal Dist.,
804 S.W.2d 894 (Tex. 1991). Such a review is less deferential to the trial court, because a "trial
court has no discretion in deciding what the law is or in properly applying it." Kessler, 932 S.W.2d
at 735 (citing Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992)). If the trial court files findings
of fact in an agreed case, they are disregarded by the appellate court. Davis v. State, 904 S.W.2d
946, 950 (Tex. App.--Austin 1995, no writ). The Attorney General thus urges us to disregard the
district court's findings of fact.

 Blue Cross/Texas asserts that although there were numerous stipulations, this is not
an agreed case and the district court considered disputed fact issues in making its decision. Thus,
it was appropriate for the district court to file findings of fact and those findings should be
considered by this Court.

 Rule 263 provides in its entirety:


Parties may submit matters in controversy to the court upon an agreed statement of
facts filed with the clerk, upon which judgment shall be rendered as in other cases;
and such agreed statement signed and certified by the court to be correct and the
judgment rendered thereon shall constitute the record of the cause.



Tex. R. Civ. P. 263. Although the record does not contain an "agreed statement signed and certified
by the [district] court to be correct," this Court has held that strict compliance with rule 263 is not
a prerequisite for an agreed case. See Lambda Constr. Co. v. Chamberlin Waterproofing & Roofing 
Sys., Inc., 784 S.W.2d 122, 125 (Tex. App.--Austin 1990, writ denied) (citing Reed v. Valley Fed.
Sav. & Loan Co., 655 S.W.2d 259, 264 (Tex. App.--Corpus Christi 1983, writ ref'd n.r.e.); Henry
S. Miller Co. v. Wood, 584 S.W.2d 302, 303 (Tex. Civ. App.--Texarkana 1979), aff'd, 597 S.W.2d
332 (Tex. 1980)); see also Kessler, 932 S.W.2d at 735 ("an appellate court may treat the case as a
case involving an agreed statement of facts under rule 263 if the record indicates that the trial court
heard the case on stipulated facts") (citing Lambda Constr. Co., 784 S.W.2d at 125).

 An examination of the record from the district court reveals that although a large part
of the evidence before the district court consisted of the parties' stipulations, the court was correct
in not treating the case as agreed. The parties initially filed what they termed a "Stipulation of
Facts," consisting of 397 written stipulations and 126 exhibits. The stipulation was twice
supplemented, adding 51 written provisions and 33 exhibits. Each of the filings was signed by the
attorneys for the parties and prefaced with the following agreement:


[The parties] hereby file the following . . . as evidence in this cause, and in order to
expedite the conclusion of this Litigation and to prevent the unnecessary expenditure
of resources of [the parties], [the parties] agree and stipulate that the following facts,
exhibits and affidavits (including any attachments to such affidavits) attached hereto,
and all facts recited in the exhibits, except as specifically set forth in [certain
identified stipulations] and affidavits (including any attachments to such affidavits),
are true and correct for all purposes of this Litigation and only for purposes of this
Litigation and may be considered by [the district court] as evidence in this Litigation
with the same dignity, force and effect as if such facts, exhibits, and testimony in
such affidavits (and attachments to such affidavits) were offered in evidence at a trial
on the merits, through competent witnesses testifying at a trial, and such facts,
exhibits, testimony, and attachments were admitted into evidence in this Litigation. (8)



It is significant that the agreement does not reflect an agreement that the stipulations are complete
or accurate, does not state that it was the parties' intention that this be an agreed case, and does not
reference rule 263. Before trial, the parties corresponded, apparently unsuccessfully, about
"correcting" certain of the stipulations, and the attorney general moved to "correct" others. Blue
Cross/Texas objected to the motion, urging that it was "a last minute attempt to change the
stipulations." The district court observed that he could not force the parties to agree on the
stipulations but would like them to be accurate and encouraged the parties to "see if you can't modify
the stipulations to fit what the actual facts are." It does not appear from the record that the
stipulations were subsequently changed.

 The Attorney General also filed objections to and a motion to strike portions of Blue
Cross/Texas's trial brief on the basis that Blue Cross/Texas was attempting "improperly to
supplement the record in this case and assert facts which have not been stipulated by the parties." 
At trial, the Attorney General waived his objections and motion and asked the court to take judicial
notice of an additional document. Blue Cross/Texas objected on the ground that it had not "had an
opportunity to analyze or consider anything about [the document]." The court responded that it was
the court's intention "to consider just about anything but give everybody a chance to respond."

 After the district court signed the final judgment in this cause, Blue Cross/Texas
requested the court to file findings of fact and conclusions of law. The Attorney General objected
to the request and, asserting that the case had been tried as a rule 263 agreed case, requested the court
to sign the stipulations "and certify them to be correct." Blue Cross/Texas responded by again
requesting that the court file findings and conclusions and deny the Attorney General's request for
rule 263 certification. Ultimately, the district court filed findings and conclusions and denied the
Attorney General's motion to sign the stipulations.

 Distilled, the above-noted portions of the district-court record reveal that the parties
did not jointly request that the court treat this case as agreed and did not comply with rule 263. Until
the moment of trial, the parties were arguing about what evidence should be before the court. There
is no evidence that the district court treated the case as agreed. The court considered evidence that
was not subject to the stipulations. Blue Cross/Texas consistently objected to the case's being
considered an agreed case by the district court. We have found no case, and have been directed by
the parties to none, where an appellate court has declared a case to be agreed pursuant to rule 263
when the trial court has treated it otherwise. We hold, under circumstances such as these, that it is
within the trial court's discretion to determine whether a case is an agreed case. "A trial court abuses
its discretion if its decision 'is arbitrary, unreasonable, and without reference to guiding principles.'"
Goode v. Shoukfeh, 943 S.W.2d 441, 446 (Tex. 1997) (quoting Mercedes-Benz Credit Corp. v.
Rhyne, 925 S.W.2d 664, 666 (Tex. 1996)). In the present instance, we cannot say that the district
court abused its discretion in refusing to certify the stipulations and in making findings and
conclusions. See also Peterson v. NCNB Tex. Nat'l Bank, 838 S.W.2d 263, 265 (Tex. App.--Dallas
1992, no writ) (holding no agreed case when trial court considered matters other than stipulations
in rendering judgment). Therefore, we will not review this cause as an agreed case.

DISCUSSION


The Doctrine of Cy Pres

 The Attorney General's petition, as well as his brief to this Court, posits that he filed
suit under his constitutional and common-law powers to protect charitable trusts. In so doing, he
invokes the equitable doctrine of cy pres. The doctrine is of ancient origin and, as described by
Justice Story, applies


. . . where a literal execution [of a charitable bequest] becomes inexpedient or
impracticable, the court will execute it, as nearly as it can, according to the original
purpose, or (as the technical expression is) cy pres. This doctrine seems to have been
borrowed from the Roman law; for by that law, donations for public purposes were
sustained and were applied, when illegal, cy pres, to other purposes, at least one
hundred years before Christianity became the religion of the empire.



Joseph Story, Commentaries on Equity Jurisprudence 806-07 (1st English ed.) (Legal Classics
Library 1988) (1884) (footnotes omitted); Edith L. Fisch, The Cy Pres Doctrine in the United States
3 (1950).

 In Texas, the first general explanation of the doctrine and its application appears in
Inglish v. Johnson, 95 S.W. 558, 560 (Tex. Civ. App.--Dallas 1906, writ ref'd). The court noted
that the doctrine is founded in this country "upon the common law" and its application "in the
exercise of a general equity jurisdiction is favored here." Id. Today


[t]he most common application of the cy pres doctrine is in the law of charitable
trusts. If it is impossible, impractical, or illegal to carry out the terms of a charitable
trust, and the settlor has indicated a general charitable purpose, the courts will
authorize the substitution of another charitable scheme within the general purpose.



Rekdahl v. Long, 417 S.W.2d 387, 396 (Tex. 1967) (Steakley, J., dissenting). (9) For the doctrine to
apply, there must exist a charitable trust established for a general charitable purpose, whose original
charitable purpose has failed. Historically, for cy pres to apply to a failed charitable trust, the
donation or bequest that established the trust must have been made with the intent that it be used
only for charitable purposes. See Frisch, supra at 149.

 The district court held that the doctrine of cy pres did not apply because Blue
Cross/Texas was not a charitable organization. In one issue, the Attorney General asserts that the
district court erred in holding that Blue Cross/Texas was not a common-law charitable corporation. 
The Attorney General argues the issue in two subparts: (1) the 1939 statute under which Blue
Cross/Texas was organized compelled that the corporation by definition be a common-law charity,
and thus it was as a matter of law; and (2) the district court should not have considered Blue
Cross/Texas's current operations and lack of tax-exempt status in reaching his conclusion.


Was Blue Cross/Texas a Common-Law Charity by Virtue of its Incorporation?

 The Attorney General presents a straightforward argument: "Under the law of
charitable trusts, whether Blue Cross/Texas is a charity is determined by whether Blue Cross/Texas
was created as a common-law charity in 1939." He argues that because House Bill 191 provided that
"[c]orporations may be created as charitable, benevolent and nonprofit corporations to furnish
hospital services to its members," Blue Cross/Texas could only have been incorporated under such
provision and, therefore, is a common-law charity. Act of May 2, 1939, 46th Leg., R.S., ch. 1, § 16,
1939 Tex. Gen. Laws 123, 126, repealed by Act of June 7, 1951, 52d Leg., R.S., ch. 491, § 4, 1951
Tex. Gen. Laws 868, 1095. Blue Cross/Texas responds that Blue Cross/Texas was incorporated
under section 1 of House Bill 191, which provides that an entity "may be incorporated for the
purpose of establishing, maintaining and operating a nonprofit hospital service plan, whereby
hospital care may be provided by said corporations through an established hospital or hospitals, and
sanitariums with which it has contracted for such care, as hereinafter defined." Id. § 1 at 124.

 The district court concluded as a matter of law that "Blue Cross/Texas is not a
charitable organization subject to the cy-pres or charitable trust powers of the Attorney General." 
We review the trial court's conclusions of law de novo. TeleVentures, Inc. v. International Game
Tech., 12 S.W.3d 900, 907 (Tex. App.--Austin 2000, pet. denied) (citing Piazza v. City of Granger,
909 S.W.2d 529, 532 (Tex. App.--Austin 1995, no writ)). Conclusions of law will be upheld if the
judgment can be sustained on any legal theory supported by the evidence and may not be reversed
unless they are erroneous as a matter of law. Westech Eng'g, Inc. v. Clearwater Consts., Inc., 835
S.W.2d 190, 196 (Tex. App.--Austin 1992, no writ). In addressing this portion of the Attorney
General's argument, we look only to House Bill 191 and Blue Cross/Texas's articles of
incorporation. Its historical operation is of no relevance.

 Both parties direct this Court to the language of Blue Cross/Texas's original 1939
articles of incorporation to support their respective positions. Specifically, they direct us to two
provisions of the articles: the purpose clause and the power clause. Generally, such clauses play
different roles. The purpose clause describes the object the corporation was organized to
accomplish. Howard L. Oleck & Martha E. Stewart, Nonprofit Corporations, Organizations, &
Associations 496 (1994). The purpose of a nonprofit corporation "must be of a charitable,
educational, religious, social or other nonprofit nature." Id. The power clause sets forth the ability
or capacity of the corporation to act as an entity. Id. It is the general power "granted by the law to
all corporations of its kind of class plus those granted by the approval of its specific charter." Id. at
496-97. The purpose clause is dominant. It, not the power clause, is the real measure of corporate
authority.

 Blue Cross/Texas's purpose clause reflects that the corporation was "formed for the
purpose of establishing, maintaining and operating a nonprofit hospital service plan whereby hospital
care may be provided to the members by said corporation through an established hospital or hospitals
and sanitariums with which it has contracted for such care." (10) The clause tracks section one of
House Bill 191. See Act of May 2, 1939, 46th Leg., R.S., tit. corporations--private, ch. 1, § 1, 1939
Tex. Gen. Laws 123, 124. The corporation's power clause closely follows section sixteen: "This
corporation will be one of charity and benevolence and will have no capital stock and own no
assets." (11) Id. § 16 at 126. Each party thus may find some support for its position within Blue
Cross/Texas's articles of incorporation.

 Following enactment, the first fifteen sections of House Bill 191 became article
4590a, a part of Texas's public health laws. See Act of May 2, 1939, 46th Leg., R.S., ch. 1, §§ 1-15,
1939 Tex. Gen. Laws 123, 123-26 (formerly §§ 1-15, Art. 4590a, Vernon's Ann. Civ. Stat.),
repealed by Act of June 7, 1951, 52d Leg., R.S., ch. 491, § 4, 1951 Tex. Gen. Laws 868, 1095. 
Section sixteen however specifically amended and became a part of article 1302, the general
corporation statute. See id. § 16 at 126 (formerly subd. 104, Art. 1302, Vernon's Ann. Civ. Stat.).
Blue Cross/Texas argues that this divided codification is further indication that it could incorporate
under section one. The Attorney General disagrees, asserting that section sixteen is the only section
that provided "specific legislative authorization" for the incorporation of group health plans; the
other sections constituted but "general provisions governing the creation and operation of the group
hospital service plans" authorized by the legislature. He characterizes Blue Cross/Texas's position
as one designed to distance itself from section sixteen, because if the corporation was organized for
charitable, benevolent, and nonprofit purposes, it was a common-law charity as a matter of law.

 Because, for purposes of this opinion, we will presume without deciding that Blue
Cross/Texas was incorporated under section 16, we need not determine whether the legislature
intended that group hospital plans could be incorporated under section one. We disagree with the
Attorney General that if Blue Cross/Texas was incorporated in 1939 as a charitable, benevolent, and
nonprofit corporation, it was a common-law charity and, if so, it remained a common-law charity
for the duration of its existence. To do so would be to attribute greater importance to Blue
Cross/Texas's power clause than to its purpose clause and, more importantly, ignore the plain
language of section 16. Section 16 does no more than allow incorporation "to furnish hospital
services to [the corporation's] members." Act of May 2, 1939, 46th Leg., R.S., ch. 1, § 16, 1939
Tex. Gen. Laws 123, 126, repealed by Act of June 7, 1951, 52d Leg., R.S., ch. 491, § 4, 1951 Tex.
Gen. Laws 868, 1095. By its very language, the section contemplates that a hospital services
corporation would have members, thus restricting the class of persons that the corporation may
benefit. It specifically authorizes such a corporation to benefit only itself, not the general public. 
House Bill 191 nowhere anticipates or requires that Blue Cross/Texas will receive its funding from
charitable contributions or donations. The statute requires neither a settlor nor a donor.

 Section three provides further evidence that the legislature anticipated that a hospital-service-plan corporation would function without charitable contributions: "said corporations shall
be governed and conducted as nonprofit organizations for the sole purpose of offering and furnishing
hospital service to its members in consideration of the payment by such members of a definite sum
for the hospital care so contracted to be furnished. Id. § 3 at 124 (emphasis added).

 The Attorney General forcefully argues that there was a general public purpose
driving the formation of Blue Cross/Texas. He points out that the legislature enacted House Bill 191
at the end of the Great Depression. The loss of millions of jobs and soaring unemployment led to
a growing public recognition of the need for some mechanism by which middle-income people could
finance the rising costs of hospitalization, particularly because hospital insurance was virtually
nonexistent at the time. Hospital plans would deal with health services long recognized as a
community responsibility. They would not operate as traditional insurance companies, but would
provide health services to persons who might otherwise require the aid of philanthropic groups or
be a burden to taxpayers. Blue Cross/Texas responds that health insurance was readily available in
Texas in 1939, and at the time Blue Cross/Texas was incorporated, several Dallas hospitals were
offering group hospitalization to the general public; furthermore, at least one insurance company was
selling group hospitalization insurance in Texas's major cities. However, the motivation behind the
enabling legislation cannot obscure that the legislature allowed the formation of corporations to
establish group health services plans solely for the benefit of the corporations' members, not the
public as a whole. Further, although the legislature may enact a law in response to a pressing social
need, it may allow that need to be addressed by private, not public entities. We do not believe that
in enacting House Bill 191 the legislature intended to create common-law charities as the exclusive
instrument for the administration of group hospital plans.

 The Attorney General directs this Court to Blocker v. State to support his contention
that Blue Cross/Texas is a common-law charity. 718 S.W.2d 409 (Tex. App.--Houston [14th Dist.]
1986, writ ref'd n.r.e). He argues that "[w]hen a corporation is created as a common-law
charity--ordinarily, as here, by a declaration in the articles of incorporation--that declaration is a
permanent and irrevocable designation of those assets for charitable purposes." (Emphasis added.) 
The argument, by the use of the term declaration, avoids specific scrutiny of the corporation's
purpose clause and construes Blocker too broadly. In Blocker, "the articles of incorporation
specifically provided that the purpose of the corporation was the 'teaching of the [y]outh of this land
music and its allied arts,'" and the court observed that education "is considered a charitable
purpose." Id., 718 S.W.2d at 415 (emphasis added). The court grounded its holding on the necessity
of the organization's having been organized for the benefit of the public:


Because a charitable corporation is organized for the benefit of the public, and not
for private profit or for its own benefit, the public has a beneficial interest in all
property of a public benefit, non-profit corporation. Such a corporation has legal title
to the property but may use it only in furtherance of its charitable purposes.



Id. (emphasis added). The plain language of Blue Cross/Texas's purpose clause makes it clear that
the corporation was organized to benefit its members. The plain language of House Bill 191 allowed
Blue Cross/Texas to be organized for the benefit of its members. We will not read more into the
legislature's action, and we decline to hold, as a matter of law, that a corporation formed under
House Bill 191 automatically became a charitable trust or public charity. We reject the Attorney
General's contention that "Blue Cross/Texas's status as a common-law charity was irrevocably
formed at the moment of its inception." Simply stated, we hold that where the law allows a
nonprofit corporation to be operated solely for the benefit of its members, the corporation cannot be
deemed as a matter of law to be a public charity.

 Although the Attorney General has chosen to base his attack on the district-court
judgment solely on the application of House Bill 191, the evidence must still support the findings
that led the court to the conclusion that Blue Cross/Texas was not a charity. Thus, our inquiry has
not ended. "Whether an organization is a purely public charity is a question of fact." Baptist Mem'ls
Geriatric Ctr. v. Tom Green County Appraisal Dist., 851 S.W.2d 938, 945 (Tex. App.--Austin
1993, writ denied) (citing First Baptist/Amarillo Found. v. Potter County Appraisal Dist., 813
S.W.2d 192, 195 (Tex. App.--Amarillo 1991, no writ); Lamb County Appraisal Dist. v. South Plains
Hosp.--Clinic, Inc., 688 S.W.2d 896, 903 (Tex. App.--Amarillo 1985, writ ref'd n.r.e.)).

 The district court made nineteen findings of fact. "A trial court's findings are
reviewable for legal and factual sufficiency of the evidence by the same standards that are applied
in reviewing evidence supporting a jury's answer." Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex.
1994); Starcrest Trust v. Berry, 926 S.W.2d 343, 352 (Tex. App.--Austin 1996, no writ). The
Attorney General does not challenge the district court's findings. He urges instead that the stipulated
facts support his position that Blue Cross/Texas was a public charity as a matter of law. The district
court's findings are thus binding on this Court.


When findings of fact are filed and are unchallenged, as here, they occupy the same
position and are entitled to the same weight as the verdict of a jury. They are binding
on an appellate court unless the contrary is established as a matter of law, or it there
is no evidence to support the finding.



McGalliard v. Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1986) (citing Swanson v. Swanson, 228
S.W.2d 156 (Tex. 1950)); Teague v. Bandy, 793 S.W.2d 50, 53 (Tex. App.--Austin 1990, writ
denied) (citing McGalliard, 722 S.W.2d at 696). The Attorney General bore the burden of proving
that Blue Cross/Texas was a public charity. Thus, to prevail, he must demonstrate on appeal that the
evidence establishes, as a matter of law, all vital facts in support of his position. Dow Chem. Co.
v. Francis, 46 S.W.3d 237, 241 (Tex. 2001) (citing Sterner v. Marathon Oil Co., 767 S.W.2d 686,
690 (Tex. 1989)); W. Wendell Hall, Standards of Review in Texas, 34 St. Mary's L.J. 1, 164 (2002). 
The reviewing court must first examine the record for evidence that supports the finding, while
ignoring all evidence to the contrary. Dow Chem. Co., 46 S.W.3d at 241 (citing Sterner, 767 S.W.2d
at 690); Hall, supra, at 165. The issue should be sustained only if the contrary proposition is
conclusively established. Dow Chem. Co., 46 S.W.3d at 241 (citing Croucher v. Croucher, 660
S.W.2d 55, 58 (Tex. 1983)); Hall, supra, at 165.

 We begin our analysis by returning to Blue Cross/Texas's purpose clause. The clause
reinforces that the corporation's activities would be devoted solely to the benefit of its members by
expressing that Blue Cross/Texas would establish, maintain, and operate a "nonprofit hospital
service plan whereby hospital care may be provided to the members by said corporation." 
(Emphasis added.) Blue Cross/Texas's articles of incorporation propose no general charitable
purpose directed toward the public as a whole or toward any indefinite or undefined segment of the
public.

 To constitute a public charity or charitable trust, a corporation must be organized "for
the benefit of the public, and not for private profit or its own benefit." Blocker, 718 at 415 (emphasis
added); accord Powers v. First Nat'l Bank, 161 S.W.2d 273, 278 (Tex. 1942) (holding that "a gift
for the relief of poverty generally is a gift to a purely public charity because it relieves the whole
citizenship of its burden to the extent of the gift"); cf. Baywood Country Club v. Estep, 929 S.W.2d
532, 538 (Tex. App.--Houston [1st Dist.] 1996, writ denied) (holding that conveyance for benefit
of members of corporation, not for benefit of indefinite beneficiaries, established corporation as
private entity rather than public organization) (citing Blocker, 718 S.W.2d at 415).

 The district court found that Blue Cross/Texas


operates only for the benefit of its policyholders, not the public at large[,] . . . does
not receive gifts or charitable contributions[,] . . . is not exempt from federal income
tax[,] . . . does not fall within section 501(c)(3) of the Internal Revenue Code[,] . . .
is not exempt from state sales tax, state premium tax nor state ad valorem tax[, and]
. . . in practice . . . has none, and has never had any, of the attributes of a charity.



These findings support the court's conclusion that Blue Cross/Texas was not a charitable
corporation.

 In support of his findings, the district court considered, inter alia, the following
stipulations of the parties:


 Blue Cross/Texas's corporate surplus and reserves have been accumulated from
policyholder premiums, administrative service fees, subrogation, and earned
investment income in excess of contractual benefits paid to its policyholders and
business expenses;




 a charitable contribution is a contribution in money or property given from a
detached and disinterested generosity, gratuitously and without consideration, to
an organization in order to support a charitable purpose or charitable purposes.




 Blue Cross/Texas has not received charitable contributions;




 Blue Cross/Texas has not received contributions that would be considered
charitable contributions allowed by the Internal Revenue Code to be deductible
as such from the gross income of the payor;




 Blue Cross/Texas has not received any money, other than from investments,
without incurring a contractual obligation to provide benefits or services pursuant
to the terms of insurance policies or other contracts;




 premiums paid to Blue Cross/Texas by its policyholders in return for Blue
Cross/Texas's contractual obligation to provide payments for its policyholders'
eligible health-care claims have never been charitable contributions or allowed
by the Internal Revenue Code to be deductible as such from the policyholders'
gross income;




 Blue Cross/Texas has not provided any gratuitous or charitable insurance benefits
to any individual or group;




 Blue Cross/Texas has not provided insurance to any individual or group that has
not compensated Blue Cross/Texas for such insurance;




 Blue Cross/Texas has not provided insurance coverage or benefits to any
individual or group other than that provided to its policyholders;




 Based on Blue Cross/Texas's records available at trial, all charges by Blue
Cross/Texas to its policyholders have been set at competitive market rates, have
never been intentionally set below Blue Cross/Texas's cost of providing
insurance, and have always been set with the intention of generating a profit to
be added to Blue Cross/Texas's surplus and used in its business;




 Blue Cross/Texas has never been an "insurer of last resort," that is, an insurance
provider that is required by statute to offer insurance coverage or a particular type
to every person, otherwise uninsurable, in a particular group or class of persons
at a rate to be calculated pursuant to such statute; and




 in no year from calendar year 1977 through calendar year 1996, did Blue
Cross/Texas make charitable contributions in excess of two-thirds of one-tenth
of one percent of its total revenues.




 The evidence makes it clear that Blue Cross/Texas acquired none of its assets from
donors who intended their donations to contribute to the public benefit. In fact there is no evidence
that the corporation has ever received a donation or that one has ever been made. The evidence is
undisputed that all of the assets maintained by Blue Cross/Texas at the time of its merger with Blue
Cross/Illinois were either originally obtained through transactions with a quid pro quo or were a
result of the investment of the proceeds of those transactions. Not only has Blue Cross/Texas never
had a public charitable purpose, the evidence is undisputed that with only minor exceptions, all
revenues generated by Blue Cross/Texas have been used to benefit its policyholders or for its own
corporate purposes. (12) 

 The Attorney General has failed to demonstrate that the evidence establishes, as a
matter of law, all vital facts necessary to support his position that Blue Cross/Texas was a public
charity. See Dow Chem. Co., 41 S.W.3d at 241. The evidence in this record, most of it stipulated,
establishes the contrary and conclusively supports the district court's findings. (13)


Blue Cross/Texas's Current Operations and Lack of Tax-Exempt Status

 The Attorney General is critical of the district court's approach in examining Blue
Cross/Texas's operational attributes based on precedent derived from "quo warranto, tax exemption,
and charitable immunity cases." Indeed, as expressed in his judgment, the district court examined
cases decided in a wide variety of contexts. Primarily, the Attorney General is critical of the court's
apparent reliance on Farmer v. State ex rel. Carruthers as authority for examining Blue
Cross/Texas's "actual practices" to determine whether it was a charity. 7 S.W. 220 (Tex. 1888). 
Farmer was a quo warranto case brought to revoke a corporation's franchise on the basis that
although the corporation had been organized as a "benevolent association," it was in fact operating
for the benefit of its members. (14) Id. at 220. In reaching its conclusion that the corporation was an
insurance company, the supreme court observed that "[i]t matters not what name the association may
assume. The law looks to the real objects of the body, and not to the name indicative of benevolence
which it may have assumed." Id. at 223. The court also noted that "it was proper to inquire into all
facts tending to show whether the appellants were a benevolent association, or an insurance company
conducted for the gain of its officers." Id. at 224. The Attorney General would restrict review of
an alleged charitable corporation's actual activities to quo warranto cases, and stresses that Farmer
was decided before the legislature enacted House Bill 191.

 To bolster his position, the Attorney General calls this Court's attention to our own
opinion in State v. Texas Mutual Life Insurance Co., 51 S.W.2d 405, 409 (Tex. Civ. App.--Austin
1932), rev'd on other grounds, 58 S.W.2d 37 (Tex. 1933). In Texas Mutual Life, also a quo
warranto case, we construed Farmer to go "no further than [holding] that the association there under
consideration was not benevolent . . . it was organized for profit and was therefore not benevolent
. . . ." Id. But we went on to infer that a court must examine the actual operations of a corporation
to determine its true purpose: "The [Farmer] opinion points out that the record showed that the real
purpose of the association was to provide salaries and commissions for its officers." Id. This Court
also approved of the Farmer approach in State v. Memorial Benevolent Society, 384 S.W.2d 776,
778 (Tex. Civ. App.--Austin 1964, writ ref'd n.r.e.). The Attorney General argues that Memorial
Benevolent Society is "inapplicable because House Bill 191 specifically authorized and required
Blue Cross/Texas to be both an insurance-like entity and a charitable and benevolent corporation." 
(Emphasis added.) We have rejected the argument that House Bill 191 required Blue Cross/Texas
to be a charitable corporation to the extent that the cy pres doctrine would apply.

 The Attorney General also directs us to City of Longview v. Markham-McRee
Memorial Hospital, a tax-exemption case, as being instructive. 152 S.W.2d 1112 (Tex. 1941). He
points out the case was being litigated at the time Blue Cross/Texas was incorporated. (15) To the
extent that the court's opinion is instructive, it supports the proposition that a court should examine
the actual activities of a corporation to determine its true nature. It was undisputed that Markham-McRee was a "charitable institution, and . . . engaged in the operation of the hospital in question as
a charitable enterprise," id. at 1112, but because the hospital rented office space to physicians, it had
engaged in a commercial transaction and was not entitled to an exemption from ad valorem taxes,
id. at 1114. It is undisputed that Blue Cross/Texas never applied for an ad valorem tax exemption.

 The ad valorem tax cases, like the quo warranto cases reviewed by the district court,
did no more than provide guidance to the district court and play the same role in this Court. They
are not conclusive. But the guidance such cases provide is substantial, because these types of cases
are, for all practical purposes, the only cases that examine the question of what is a purely public
charity. Because they uniformly support Blue Cross/Texas's position and the judgment of the district
court, it is little wonder that the Attorney General argues that they are inapplicable. This Court has
stated that an organization's "total operation may determine whether the organization meets the
requirements of a 'purely public charity.'" Baptist Mem'ls Geriatric Ctr., 851 S.W.2d at 944 (citing
North Alamo Water Supply, 804 S.W.2d at 898-99). In North Alamo Water Supply, the supreme
court held that two water-supply corporations were not charities entitled to ad valorem tax
exemptions because the 


benefits dispensed by these corporations do not in any way enure to the entire
community but only to individual water district "members" who are able to pay for
those benefits. These corporations are not organized to provide charitable services
to the community as a whole but are organized solely for the purpose of selling water
to those within the boundaries of the district who can afford to pay the costs assessed.



North Alamo Water Supply, 804 S.W.2d at 899 (footnote omitted). Here, the benefits dispensed by
Blue Cross/Texas did not enure to an entire community but only to the corporation's individual
members who paid premiums for the corporation's group hospital plan.

 In North Alamo Water Supply, the supreme court provides a compendium of cases
that examine the history of what constitutes a public charity in the ad valorem tax-exemption
context. See id. at 897-99. These cases without exception require that to be a charity the
organization must provide services beyond a defined group of persons for whose exclusive benefit
it was organized. See City of McAllen v. Evangelical Lutheran Good Samaritan Soc'y, 530 S.W.2d
806, 810 (Tex. 1975); City of Amarillo v. Amarillo Lodge No. 731, 488 S.W.2d 69, 71 (Tex. 1972);
San Antonio Conservation Soc'y, Inc. v. City of San Antonio, 455 S.W.2d 743, 745 (Tex. 1970); City
of Houston v. Scottish Rite Benevolent Ass'n, 230 S.W. 978, 981 (Tex. 1921). The Attorney
General's assertion that the district court placed undue reliance on these cases is no more than a
reassertion of his position that House Bill 191 conclusively established that a corporation organized
under the statute's authorization is, ipso facto, a public charity--a position we reject. We further
reject the notion that "public charity" should be defined in one manner for application of the cy pres
doctrine and in another when applying the tax code.

 Finally, the Attorney General generally complains, without citation to authority, that
"[i]t was error on the part of the trial court to assume that the current operations of Blue Cross/Texas
are paramount in determining its common-law charity status." We have reviewed in this opinion the
findings of the district court. Although the district did consider the current operations of Blue
Cross/Texas in concluding that Blue Cross/Texas was not a common-law charity, the court was
entitled to look at all of the facts surrounding Blue Cross/Texas's operation in reaching his decision. 
See North Alamo Water Supply, 851 S.W.2d at 898-99; Baptist Mem'ls Geriatric Cen., 851 S.W.2d
at 944. The Attorney General's argument is a reiteration of his position that the district court and
this Court may consider no more than Blue Cross/Texas's original incorporation to determine
whether it was a charity--a position with which we disagree.


CONCLUSION


 We have carefully examined the record from the district court, including the lengthy
stipulations of the parties. We observe that the issue of whether House Bill 191 establishes a
hospital plan corporation as a common-law charity has never been addressed by the courts of this
state. House Bill 191 allowed a corporation providing group hospital plans to organize for the
benefit of its members only, not for general charitable purposes. The corporation's members
purchased the services of the corporation. The general public, on the other hand, had no access to
those services. We hold that regardless of how Blue Cross/Texas was incorporated, the purpose of
the corporation controls and that purpose is determined from the corporation's purpose clause, as
contained in its articles of incorporation, and its actual operations. Because the district court's
judgment that Blue Cross/Texas was not a common-law charity is amply supported by the evidence,
we affirm the judgment.



 

 Lee Yeakel, Justice

Before Justices B. A. Smith, Yeakel and Aboussie*

Affirmed.

Filed: July 30, 2003












* Before Marilyn Aboussie, Chief Justice (retired), Third Court of Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. This suit was originally brought in the name of a predecessor to the present attorney
general. We have substituted the current holder of that office as the correct party to this proceeding. 
See Tex. R. App. P. 7.2(a).
2. The Attorney General also sued Group Life and Health Insurance Company, Group Medical
and Surgical Services, Rio Grande HMO, Inc., HealthCare Benefits, Inc., Dental Benefits, Inc.,
Motiva, Inc., ComStar Communications, Inc., Custom General Agency, Inc., and TexCare HMO,
Inc., described by the attorney general as "wholly-owned, for-profit subsidiaries of [Blue
Cross/Texas], operating under the aegis of [Blue Cross/Texas], which hold assets for or on behalf
of [Blue Cross/Texas]," and Arizona/Texas International, Inc., West Texas Health Plans, L.C., d/b/a
HMO Blue, West Texas, and Mid-Con Health Plans, L.C., d/b/a HMO Blue, SouthWest Texas (also
referred to in the pleadings as Mid-Con Health Plans, Inc.), described as "for-profit joint ventures
in which [Blue Cross/Texas] has various partnership or other business interests, and each holds
assets for or on behalf of [Blue Cross/Texas]." Before trial, the Attorney General nonsuited West
Texas Health Plans and Mid-Con Health Plans. The remaining original defendants are appellees in
this Court. Appellees' interests do not diverge and, for convenience, we will refer to them
collectively as "Blue Cross/Texas."
3. See Tex. Rev. Civ. Stat. Ann. arts. 1396-1.01; 1.02A(1)-(3); 5.03 (West 1997).
4. The original "Plan and Agreement of Merger" between Blue Cross/Texas and Blue
Cross/Illinois was signed July 9, 1996, and was to become effective when the appropriate state
authorities in Texas and Illinois had issued certificates of merger. The settlement agreement between
the Attorney General and Blue Cross/Texas was signed September 17, 1998.
5. The parties' district-court pleadings, their briefs in this Court, their stipulations, and the
district court's final judgment, findings, and conclusions use the terms "charity," "public charity,"
"common-law charitable corporation," "common-law charity, "and "charitable organization"
interchangeably. As used by the district court and the parties, we understand all such terms to mean
the same thing: an entity subject to the application of the doctrine of cy pres. Such will also be their
meaning in this opinion.
6. The Texas Department of Insurance and the insurance commissioner now perform the
duties of the State Insurance Commission and Board of Insurance Commissioners. See Act of May
27, 1991, 72d Leg., R.S., ch. 242, art. 1, § 1.01, 1991 Tex. Gen. Laws 939, 939.
7. Blue Cross/Texas was originally incorporated as "Group Hospital Service, Incorporated." 
The articles of incorporation were amended in 1983 to change the corporation's name to "Blue Cross
and Blue Shield of Texas, Inc."
8. The original stipulation was amended once. The amendment did not include a similar
preface or agreement.
9. The phrase itself probably comes from the Norman French expression cy pres comme
possible, meaning "as near as possible." Edith L. Fisch, The Cy Pres Doctrine in the United States
1 (1950). It is most often pronounced "s-pray." See Bryan A. Garner, A Dictionary of Modern
English Usage 242 (2d ed. 1995).
10. The parties stipulated that this clause is Blue Cross/Texas's purpose clause.
11. The parties stipulated that this clause states the "classification" of Blue Cross/Texas. A
corporation's classification determines what powers are granted it by law. See Howard L. Oleck &
Martha E. Stewart, Nonprofit Corporations, Organizations, & Associations 496-97 (1994).
12. The district court also found that Blue Cross/Texas had numerous attributes of an
insurance company, including its being "subject to extensive governmental regulation as an
insurance company" and supervised by the Texas Department of Insurance and Insurance
Commissioner. Blue Cross/Texas must maintain at least 500 paying subscribers to continue
operating, file annual financial statements in the same manner as other insurance companies,
maintain adequate reserves, receive a certificate of authority from the Texas Department of
Insurance, maintain a minimum surplus, be periodically examined by the department, and belong to
a guaranty association, thereby subjecting it to the possibility that Blue Cross/Texas might "have to
help pay claims against impaired for-profit insurance companies." The Attorney General does not
dispute these findings. Although the findings do not establish that Blue Cross/Texas is an insurance
company, they do reflect that Blue Cross/Texas's operations were inconsistent with a common-law
charity.
13. Both parties direct this Court to opinions of courts in other states. These opinions are not
particularly helpful in that they involve statutes and issues unique to the particular state's group
health plans. To the extent they provide any guidance, they trend toward Blue Cross/Texas's
position. See, e.g., United Hosps. Serv. Ass'n v. Fulton County, 114 S.E.2d 524, 527 (Ga. 1960)
("This is pure and simple insurance in direct competition with private concerns which are engaged
in the same business but enjoy no tax-exemption benefit."); Illinois Hosp. & Health Serv., Inc. v.
Aurand, 373 N.E.2d 1021, 1025 (Ill. App. Ct. 1978) ("It can thus be seen that this corporation,
laudable and desirable as it may be, is for the benefit of those members who make their payments. 
If they do not pay they are dropped from the rolls. No provision is found under this plan whereby
any charity is dispensed to those members who do not pay, or to any destitute member of society in
general."); Consumers for Affordable Health Care v. Iuppa, 2001 WL 1794975 (Me. Super. 2001)
(specific statute governed conversion of Blue Cross/Blue Shield of Maine to stock insurer); Blue
Cross & Blue Shield of Mo. v. Nixon, 2002 WL 7553387 (Mo. App. W.D. 2002) (opinion does not
address whether Missouri Blue Cross Blue Shield organization was common-law charity); Blue
Cross & Blue Shield of Kans. City, Inc. v. Nixon, 2000 WL 779053 (Mo. App. W.D. 2000)
(organization examined under Missouri statute to determine purpose for which it was organized); 
ABC for Health, Inc. v. Commissioner of Ins., 640 N.W.2d 510, 515-16 (Wis. App. 2001)
(Wisconsin Blue Cross Blue Shield organization not a charity because not operated exclusively for
charitable purposes but for benefit of individuals who paid premiums). 
14. A quo warranto proceeding serves to question the right of a person or corporation to
exercise a public franchise or office. Alexander Oil Co. v. Seguin, 825 S.W.2d 434, 436-37 (Tex.
1991). The term quo warranto (literally, "by what authority") derives from the common law writ
so named. See Garner at 731-32.
15. The court of civil appeals decided the case in 1939, the same year Blue Cross/Texas was
incorporated. See City of Longview v. Markham-McRee Mem'l Hosp., 134 S.W.2d 793 (Tex. Civ.
App.--Texarkana 1939), rev'd, 152 S.W.2d 1112 (Tex. 1941).